Day, J.
 

 The question involved, in this case is well stated in the petition in error to be whether
 
 *389
 
 or not the erection of poles and wires by a telephone company within the limits of a highway outside of a municipality, and without the consent of the landowner, whose farms abut upon said highway, and whether or not the trimming of trees growing within the limits of the highway in front of the property of the landowner, where such trimming is necessary for the telephone line, constitutes a taking of property without compensation, contrary to Section 19, Article I, of the Constitution of the state of Ohio, and the Fifth Amendment to the Constitution of the United States.
 

 The question involved is not new to the courts of this state; the basic subject of inquiry being, "What are proper highway uses ?
 

 The fee to streets within municipalities in Ohio rests in trust in the municipality for street purposes, subject to the abutting owner’s rights to ingress and egress, light, and air. On the other hand, outside the limits of a municipality, the fee to the land in the rural highway rests in the abutting landowner, subject only to such rights as are incident to and necessary for public passage, in other words, the right of the public to improvement, maintenance and uninterrupted travel; the abutting owner having all right to all uses of the land not inconsistent with such right of improvement and travel.
 

 Bearing upon the rights of the abutting owner in the country highway, two eases may be cited:
 

 In
 
 Daily
 
 v.
 
 State,
 
 51 Ohio St., 356-358, 37 N. E., 710, 712,
 
 24
 
 A. L. R., 724, 46 Am. St. Rep., 578, Spear, J., said:
 

 “Whatever may be the rule in other states, we
 
 *390
 
 have supposed that the question of the right in the highway of a landowner whose title extends to the center of the road is not an open one in Ohio. The question has been the subject of adjudication in a score of cases decided by this court, notably in the following:
 
 Bingham
 
 v.
 
 Doane,
 
 9 Ohio, 167;
 
 Crawford
 
 v.
 
 Delaware,
 
 7 Ohio St., 459;
 
 Street Railway
 
 v.
 
 Cumminsville,
 
 14 Ohio St., 523;
 
 Hatch
 
 v.
 
 Railroad Co.,
 
 18 Ohio. St., 123;
 
 McClelland
 
 v.
 
 Miller,
 
 28 Ohio St., 502;
 
 Railroad Co.
 
 v.
 
 Williams,
 
 35 Ohio St., 168;
 
 Railroad Co.
 
 v.
 
 O’Harra,
 
 48 Ohio St., 343. * * *
 

 “And, if right upon that point, the result would seem to follow, as further charged by the judge, that the landowner ‘had the right to have the trees remain and grow there without injury, whether such injury was necessary or not to the use of the lines of such telegraph company.’ The rule of law rests upon the clear ground that the appropriation of the public highways for the purpose of telegraph lines was a new use. The highways were originally dedicated for the purposes of public travel, and not for the purpose of telegraph lines. Hence the new use imposed an additional burden. The statutes of Ohio grant to telegraph companies secondary and subordinate, rather than co-ordinate, rights, with travelers, which fact is apparent in the provision that the lines are to be so constructed as not to interfere with the public use of the highways.
 
 Railway Co.
 
 v.
 
 Telegraph Asso
 
 ciation, 48 Ohio St., 390.”
 

 And in
 
 Schaaf
 
 v.
 
 Cleveland, M. & S. Ry. Co.,
 
 66 Ohio St., 215, 64 N. E., 145, the second syllabus recites:
 

 
 *391
 
 “The construction and operation of an electric plant in connection with such railway, and on the same side of the traveled public roadway, for supplying heat, power, and light to consumers for profit, constitutes another additional burden, which is an invasion of the plaintiff’s property rights.”
 

 While the exact facts in these cases are not the facts in the case at bar, yet we are disposed to accept the law therein declared as a statement of the general principles applicable in this case; that is, that the rights of the abutting owner in the highway outside a municipality are paramount to everything except the right and uses of the public for improvement and travel.
 

 Our attention is called to the case of
 
 Smith
 
 v.
 
 Central Power Co.,
 
 103 Ohio St., 681, 137 N. E., 159, and plaintiff in error places considerable stress upon the same as applicable in principle to the case at bar. The concurring opinion of- Marshall, C. J., in
 
 Smith
 
 v.
 
 Central Power Co.,
 
 relates to the rights of abutting owners in city streets, and does not undertake to decide the law with reference to the rights of abutting owners, on purely rural and country highways. The rights of abutting owners in municipalities are not involved in this case. Such rights are discussed
 
 in Callen
 
 v.
 
 Columbus Edison Electric Light Co.,
 
 66 Ohio St., 166, 64 N. E., 141, 58 L. R. A., 782, and
 
 Smith
 
 v.
 
 Central Power Co., supra.
 
 And, while it is argued that the rule should be the same as to both city streets and country highways, it may be remarked in passing that courts of this country are not uniform on the subject, and that a discussion of this question is not necessary to a
 
 *392
 
 solution of the problem presented herein. Reference may be made,-however, to
 
 Hays
 
 v.
 
 Columbiana Telephone Co.,
 
 21 Ohio Cir. Ct. R., 481;
 
 Chesapeake & Potomac Telephone Co.
 
 v.
 
 Mackenzie,
 
 74 Md., 36, 21 A., 690, 28 Am. St. Rep., 219; 10 Ruling Case Law, 94, 95; Curtis, Law of Electricity, Section 279, p. 400.
 

 It is urged that the erection and maintenance of telephone poles is not an inconsistent use of the highway, and that modern conditions require new and modern means unknown at the time of the original dedication of the highway. Our views upon this point are so clearly expressed by Mr. Justice Peckham in
 
 Eels
 
 v.
 
 American Telephone & Telegraph Co.,
 
 143 N. Y., 133, 38 N. E., 202, 25 L. R. A., 640, that we quote at some length therefrom, beginning at page 138 (38 N. E., 203):
 

 “We think neither the state nor its corporation can appropriate any portion of the public highway permanently to its own special, continuous, and exclusive use by setting up poles therein, although the purpose to which they are to be applied is to string wires thereon and thus to transmit messages for all the public at a reasonable compensation. It may be at once admitted that the purpose is a public one, although for the private gain of a corporation; but the Constitution provides that private property shall not be taken for public use without compensation to the owner. Where land is dedicated or taken for a public highway, the question is, What are the uses implied in such dedication or taking! Primarily, there can be no doubt that the use is for passage over the highway. The title to the fee of the highway
 
 *393
 
 generally remains in the adjoining owner, and he retains the ownership of the land, subject only to the public easement. If this easement does not include the right of a telegraph company to permanently appropriate any portion of the highway, however small it may be, to its own special, continuous, and exclusive use, then the defendant herein has no defense to the plaintiff’s claim. Although the purpose of a public highway is for the passage of the public, it may be conceded that the land forming such highway was not taken for the purpose of enabling the public to pass over it only in the then known vehicles, or for using it in the then known methods for the conveyance of property or the transmission of intelligence. Still the primary law of the highway is motion, and whatever vehicles are used, or whatever method of transmission of intelligence is adopted, the vehicle must move and the intelligence be transmitted by some moving body which must pass along the highway, either on or over, or perhaps under, it, but it cannot permanently appropriate any part of it. * * *
 

 “We can not agree that this permanent appropriation and exclusive possession of a small portion of the highway can properly be regarded as any newly discovered method of exercising the old public easement, for the very reason that this so-called new method is a permanent, continuous, and exclusive .use and possession of some part of the public highway itself, and- therefore can not be simply a new method of exercising such old public easement. It is a totally distinct and different kind of use from any heretofore known. It is not
 
 *394
 
 a mere difference in the kind of vehicle, or in their number or capacity, or in the manner, method, or means of locomotion. All these might be varied, increased as to number, capacity, or form, altered as to means or rapidity of locomotion, or transformed in their nature and character, and still the use of the highway might be substantially the same —a highway for passage and motion of some sort. Here, however, in the use of the highway by the defendant is the fact of permanent and exclusive appropriation and possession, a fact which is, as it seéms to us, wholly at war with that of the legitimate public easement in a highway.”
 

 This case of
 
 Eels
 
 v.
 
 American Telephone & Telegraph Co.
 
 has been cited, distinguished, and followed in several cases in New York state, but the rule as to the rights of the adjoining landowner in purely rural highways, as announced therein, has not been changed.
 

 There is a diversity of opinion in other states upon this proposition, but we are content to adhere to the former decisions of this, court in their trend for the recognition of the inviolability of private property and its protection for use for public or private purposes, unless compensation be first made in money.
 

 The rule in most United States courts, except in the federal Circuit Court of Georgia
 
 (Southern Bell Telephone & Telegraph Co.
 
 v.
 
 Nalley
 
 [C.C.], 165 F., 263), and the rule of the courts of Illinois, Maryland, New Jersey, North Dakota, Pennsylvania, Virginia, New York, Wisconsin, Mississippi, Nebraska, North Carolina, Texas, and Virginia, recognizes that the use of the rural highway for
 
 *395
 
 poles and overhead construction is an additional burden, to be paid for before it can be taken. The contrary doctrine is recognized in Alabama, Kansas, Kentucky, Michigan, Minnesota, ‘Vermont and West Virginia. Text-writers upon the subject may be cited in favor of the view that the erection of poles and wires is an additional burden. Lewis on Eminent Domain (3d Ed.), Section 187, and 2 Elliott on Roads
 
 &
 
 Streets (3d Ed.), Section 894. Nichols on Eminent Domain (2d Ed.), Section 186, recognizes that the majority of the courts have so held.
 

 1 Joyce on Electrical Law (2d Ed.), Section 321:
 

 “We are of the opinion that the construction of telegraph and telephone lines upon the highways or streets is not within the original purposes of the dedication or taking of the same, and that the poles and wires constitute an additional servitude, entitling the abutting owner to compensation.”
 

 3 Dillon on Municipal Corporations (5th Ed.), Section 1121, page 1932:
 

 “The conservative view is that such a use of the street other than by the city itself, for its own purposes and that of its inhabitants, attended as it may be, especially in cities, with serious damage and inconvenience to the abutting owner, is not a street use proper, and hence entitles such owner to compensation for such use, or for any actual injury to his property caused by the poles and lines of wire placed in front thereof.”
 

 In 8 A. L. R., p. 1304, in an exhaustive note citing numerous authorities, the editor states that:
 

 “The weight of authority is to the effect that a telephone or telegraph line is an added burden
 
 *396
 
 on a rural highway, entitling an abutting property owner to compensation.”
 

 A like conclusion is reached in the editorial note in 2 American & English Annotated Cases, p. 163.
 

 In the light of the decided weight of authority, and of the former holdings of this court, we are of the opinion that the Court of Appeals was right in its conclusions in granting the injunction herein, and its decree rendered in the premises is therefore affirmed.
 

 Judgment affirmed.
 

 Matthias, Allen and Kinkade, JJ., concur.
 

 Marshall, C. J., concurs in proposition 2 of the syllabus, and in the judgment.
 

 Jones and Robinson, JJ., concur in proposition 2 of. the, syllabus, and favor modification of the judgment.