Wilkin, J.
 

 Although the legal procedure was quite different in these two cases, they raised in last analysis the same issue. Did the moving of the poles within the highway constitute the taking of the property of the abutting owners'? Was the relocation of the poles in the expanded or widened portion of the highway the imposition of such an additional servitude as required a grant from the abutting owners in addition to the grant of easement for highway purposes'?
 

 There is striking difference of judicial opinion in this state and in the courts of last resort of different states regarding the issue raised between utilities in the highway and owners of abutting property. The abutting owners in both the instant cases rely mainly on the decision of this court in the case of
 
 Ohio Bell Telephone Co.
 
 v.
 
 The Watson Co.,
 
 112 Ohio St., 385, 147 N. E., 907. The third paragraph of the syllabus of that case states:
 

 “The erection and maintenance of telephone poles and wires within the limits of a country highway is an additional burden upon the easement and an invasion of the property rights of the abutting owner, for which he is entitled to compensation.”
 

 The opinion, at page 390, quotes the reason for the rule from earlier Ohio decisions, as follows:
 

 “The rule of law rests upon the clear ground that the appropriation of the public highways for the purpose of telegraph lines was a new use. The highways were originally dedicated for the purposes of public travel, and not for the purpose of telegraph lines. Hence the new use imposed an additional burden.”
 

 All the authorities that adhere to the rule announced in the
 
 Watson case
 
 base their reasoning upon the assertion that the pole lines constituted a totally distinct and different kind of use from any theretofore known,
 
 *405
 
 and were not within the contemplation of the abutting owners at the time of the original grant of easement for highway purposes.
 

 But can we say that the reasons for the rule in the
 
 Watson case
 
 exist in the instant cases? Can we say that pole lines were not within the contemplation of the owners when the easement was granted for the expansion of the highway? The poles were already there. To say the moving of the poles within the' highway imposes an additional servitude is to push our legal logic dead against the facts. The operation was, in legal effect and actually,'not so much a moving of poles as a moving of highway. The highway was already encumbered with the poles, and any attempted exception or reservation in a grant to the state against an existing lawful use is of no effect.
 

 The rule which has for its object the protection of private property against encroachment by public use, no matter how commendable its purpose, is nevertheless subject to a kind of erosion by the stream of progress. The uses of the highways are continuously expanding; and the rights of the abutting owners are affected .thereby. The law may impose reasonable restrictions, but it cannot stop the stream. A sound economy dictates that all forms of public conveyance and communication should be kept as far as possible in publicly defined courses. And private ownership is subject to the development which that economy entails. It would be a retrograde movement of the law to extend the rule of the
 
 Watson case
 
 beyond the basic reason for the rule.
 

 The utility companies both claimed prescriptive rights in the highway, and the Telegraph Cable Company also claimed rights under an unrecorded grant. The abutting owners, however, asserted that, if such rights existed at all, they could not be extended beyond the original locations of the pole lines. But this court need not be drawn into the legal rationalizing
 
 *406
 
 regarding that issue. Having determined that the reason for the rule in the
 
 Watson case
 
 does not apply to the facts of the instant cases it follows that neither prescriptive rights nor grants are necessary to entitle the utility companies to the use of that part of the property of the abutting owners which is covered by the highway easements.
 

 In the Huron county case, however, there was also a claim for damage done to property beyond the limits of the highway. There is evidence in this record as to trimming of trees, and as to that part of the case the rule of law announced in paragraph two of the syllabus of the
 
 Watson case
 
 applies. There is also evidence of some interference with ingress and egress on account of the location of the poles. The law is well established that the owner of property which adjoins either a country highway or a city street is entitled to damages for any interference with his access, light or air. But in view of the circumstances in this case the abutting owner was entitled to no damages for diminution of value of the remainder of his property merely because of the moving of the poles.
 

 It is impossible to determine what portion of the damages was based upon the erroneous assumption by the court that the plaintiffs were entitled to payment for diminution of value of the residue of their property because the poles were moved within the highway, as distinguished from actual damages based upon the trimming of trees and interference with access. Nor is the evidence perfectly clear as to the extent or character of the damage and interference. The record does, not disclose how the amount awarded for compensation or for damages was determined. But because of the error in the charge of the Probate Court regarding the legal effect of the relocation of the poles within the highway, the case must be remanded for further proceeding in accordance with the
 
 *407
 
 law as herein announced. And the Hamilton county case should for reasons herein announced be remanded to the Court of Appeals with instructions to sustain the demurrer to the answer and for further proceedings according to law.
 

 The judgments of the Courts of Appeals are therefore reversed and the causes remanded.
 

 Judgments reversed and causes remanded.
 

 Weygandt, C. J., Stephenson, Jones, Matthias, Bevis and Zimmerman, JJ., concur.