KUBIN ET AL., APPELLANTS, *v.* REINECK, APPELLEE.

(No. 627—Decided April 21, 1952.)

full black bar

*Messrs. Miller & Miller,* for appellants.
*Messrs. Carpenter & Carpenter,* for appellee.

SAVORD, J. This is an appeal on questions of law from a judgment of the Common Pleas Court. The parties are designated herein as they stood in the trial court.

The record discloses that plaintiffs are the owners of approximately three-fourths of an acre of land located about two and one-half miles west of Norwalk, Ohio, extending approximately 265 feet along the south side of route No. 20 ánd lying between what has been referred to as new route No. 20 and old route No. 20, the parcel being almost triangular in shape. The plaintiffs acquired the property in January 1946 from one George M. West, who on September 6, 1940, had granted "a perpetual easement and right of way for public highway and road purposes in, upon and over the lands * * *," to the state of Ohio. The easement included the entire triangular parcel. The defendant is the owner of approximately three and one-half acres of land located immediately to the east of the land of plaintiffs and about 1949 erected

upon his property a substantial building employed for tavern purposes.

In their petition, the plaintiffs allege that on or about July 1, 1949, and on divers days thereafter the defendant "unlawfully with force broke and entered" the land of plaintiffs, cut down and carried away fruit, cedar, and shade trees, grapevines, asparagus patches, roses, and lilacs, dug up and carried away topsoil, dirt, sand and gravel from an acre of ground, and converted and disposed of the same to his own use, leaving the land barren, in waste and exposed to erosion, all to the damage of plaintiffs.

In his answer, after entering a general denial of all allegations contained in the petition of plaintiffs, defendant alleges that the state of Ohio, through its highway department, having acquired a perpetual easement over certain land, including that described in the petition, in order to construct a four-lane highway now known as United States route No. 20 and an approach road from the Ridge road (formerly known as United States route No. 20), thereafter proceeded to construct such road and the approach road thereto; that when the highways were completed, an embankment remained on the real estate described in the petition, interfering with the vision of operators of motor vehicles when entering the four-lane highway from the approach road and when entering the approach road from the four-lane highway; that as the owner of the land located immediately to the east he constructed a business building thereon; that having graded his land, defendant secured permission from the state highway department to grade that portion of the land lying within the triangle bounded by old route No. 20, new route No. 20 and the property of defendant; and that defendant removed an embankment located thereon and graded and seeded the triangular plot of land so as to improve the view of operators

of motor vehicles using said highways, thereby eliminating potential hazards.

Following submission, the jury returned a verdict in favor of the defendant, and, thereafter, a motion for new trial, duly filed by plaintiffs, was overruled and judgment entered on the verdict.

In prosecuting this review, plaintiffs submit three assignments of error, namely:

(1) The court erred in overruling plaintiffs' demurrer to defendant's second defense.

(2) The verdict and judgment are against the manifest weight of the evidence and contrary to law.

(3) The court erred in its charge to the jury.

The record clearly establishes that new route No. 20 is a "limited access" highway. Defendant, deeming additional entryways to his property necessary, filed an application with the Director of Highways, seeking authority to establish such entryways.

Thereafter, on May 26, 1949, the director granted defendant permission to do the following:

"(1) Construct a 40-foot drive to a business place with an appropriate median strip over the existing 8-inch tile in the ditch line along the south side of U. S. Route 20 at a point approximately .8 miles west of the Norwalk city limits.

"(2) Also to construct a new catch basin at the west edge of the above drive for storm water only.

"(3) Also to construct a 50-foot drive to business place on to access road between present U. S. Route 20 and S. R. No. 61 as per attached plan. No drainage structure necessary for said drive.

"(4) *Also to grade area to elevation 3 feet above U. S. Route No. 20 pavement for improved site condition. Area to be seeded to grass upon completion of grading.*"

The italic in the above detailed provision is ours and indulged for the purpose of emphasizing the provision

around which this case centers. It is the claim of the defendant that all he did was done pursuant to and in strict compliance with the provisions of such permit.

Assuming that the permit by its expressions comprehended the grading of the triangular parcel of land owned by plaintiffs subject to the easement of the state, as well as the land owned by the defendant, the question arises whether defendant had authority to do that which he admittedly did. Surely such right could be only of a nature and character as derived from a grant of authority conferred by the highway director, acting in his official capacity. Considering the easement granted to the state by plaintiffs' predecessor, did the director possess the right to direct and authorize the particular acts in and upon the property of plaintiffs?

Generally speaking, it is recognized in Ohio that, as stated in the first paragraph of the syllabus in *Daily* v. *State,* 51 Ohio St., 348, 37 N. E., 710, 46 Am. St. Rep., 578, 24 L. R. A., 724:

"An owner of land adjoining a public highway whose title extends to the center of the road, who has cultivated shade trees, planted partly on his own land and partly in the line of the highway within the bounds of his deed, has a property interest in such trees, and the right to their enjoyment subject only to the convenience of public travel."

To the same effect are the holdings in *Ohio Bell Telephone Co.* v. *Watson Co.,* 112 Ohio St., 385, 147 N. E., 907, and *Hofius* v. *Carnegie-Illinois Steel Corp.,* 146 Ohio St., 574, 67 N. E. (2d), 429.

First impression might persuade that, consistent with the reasoning of the foregoing cases, the director would, in the instant case, lack authority to remove the trees, vegetable growth and garden found upon plaintiffs' land and to cause the removal of the described elevation.

However, such conclusion ignores the right and power of the director, once an easement has been acquired, to accomplish "the convenience of public travel." As long ago as in *Phifer* v. *Cox*, 21 Ohio St., 248, 8 Am. Rep., 58, it was made clear that the acquirement of an easement for a public road carries with it "the powers and privileges incident to that right." We are satisfied that the comprehensive powers granted the director by Section 1178-2, General Code, and related sections, enables such director, in the exercise of a sound discretion, to take all steps in his judgment required with respect to land over which the state owns an easement as will better provide facilitiy of travel and efficient enjoyment of the highway system. In the absence of any evidence tending to show an abuse of discretion upon the part of the director, it must be considered that he was warranted in directing the grading of the area to an elevation three feet above route No. 20 and to delegate such responsibility to the defendant, if he did so direct. If so, the defendant could not be held to be in the role of a trespasser and could not be required to respond in damages.

But did the director so direct? What does the term, "area," as employed in the permit, mean and comprehend? Was it intended to cover solely the property owned by the defendant or did it likewise include the triangular parcel owned by the plaintiffs? A mere reading of the permit makes manifest how indefinite and uncertain is its provision in this respect and renders clear the necessity of its construction.

Generally speaking, if there is no ambiguity of terms and no dispute as to the meaning of a written instrument, it is exclusively the duty of the court to construe such instrument and to determine the effect of its provisions as a matter of law. If, however, the terms of the instrument are ambiguous and indefinite and there is conflicting evidence as to the meaning thereof, a

question presents itself requiring submission, under proper instructions, to the jury. 39 Ohio Jurisprudence, 746, Section 150; *Washington Mutual Ins. Co. v. Merchants & Manufacturers Mutual Ins. Co.*, 5 Ohio St., 450; *Hassett v. Watson,* 12 Ohio App., 451; *Filtro Import Co. v. Janszen Co.,* 36 Ohio App., 63, 172 N. E., 578; *Industrial Commission v. Henry,* 43 Ohio App., 20, 182 N. E., 603; *Woodward v. Glaser,* 57 Ohio Law Abs., 180, 93 N. E. (2d), 785.

It being apparent that reasonable minds could differ in reaching a conclusion as to just what was intended by the term, ''area,'' as carried in the permit, the action of the trial court in submitting this question to the jury was correct.

In submitting the question, however, the court said:

''Now this permit will be with you when you go to your jury room and I would look it over. I am not going to read it, there is no question about the fact that they gave him permission to make an entrance there, it also sets forth he was given the right or permission to grade to three feet above route 20, and the area was to be seeded with grass upon completion of the grading. It further states that maintenance of said pipe and drives shall be the sole responsibility of the property owner.''

Thus the court in submitting the one important controverted fact to the jury for its determination at the same time instructed the jury in unqualified terms that no question existed that the highway director had granted the defendant permission to make an entrance upon the lands of plaintiffs and to do that which defendant did. The instruction thereby invaded the province of the jury to determine the exact meaning of the permit granted by the highway director, especially with respect to what was intended by the term, ''area.'' The paradoxical situation thus created could result only in confusion so far as the jury was

concerned and necessarily operated to the substantial prejudice of the plaintiffs. The resulting situation illustrates the possibility of error inherent in venturing comment upon the evidence.

We have examined plaintiffs' other assignments of error and find that they can not be sustained.

Because of the prejudicial error found in the charge, it follows that the judgment must be and it is reversed, and the cause is remanded for a new trial.

*Judgment reversed.*

FESS and CONN, JJ., concur.

CONN, J., concurring. I concur in the reversal of the judgment of the trial court on the ground stated in the opinion of Judge Savord. Further, I am of the opinion, on the issues raised on the pleadings, including the affirmative defenses in the answer of defendant, that the record does not show that the state, under its easement, after the highway was constructed, opened and used for road purposes over a period of years, had the right to go upon plaintiffs' land and appropriate the improvement and the land itself without an affirmative showing that plaintiffs had been compensated on the basis of fair and reasonable value.

On this premise, it follows that the permit issued to defendant did not confer on him a legal right to appropriate plaintiffs' property for his own use and benefit without plaintiffs' consent or reasonable compensation.