DiBella *v.* Village of Ontario et al.

[Cite as DiBella v. Village of Ontario, 4 Ohio Misc. 120.]

(No. 41795—Decided July 1, 1965.)

INJUNCTION AND DECLARATORY JUDGMENT: Court of Common Pleas of Richland County.

*Mr. David R. Arbaugh*, for plaintiff.
*Mr. Leo P. Scanlon*, for defendant Village of Ontario.
*Mr. Richard M. Christiansen*, for defendant Multi-Channel T. V. Cable Co.

MAYER, J.   The defendant, Multi-Channel T. V. Cable Company of Mansfield, has demurred to the petition herein on five grounds: Defect of parties plaintiff, misjoinder of parties defendant, improper joinder of several causes of action, that separate causes of action against several defendants are improperly joined, and that the petition does not state facts which show a cause of action.

Plaintiff, in his petition, says he is a taxpayer of Ontario and brings this suit, filed March 11, 1965, on behalf of the village after written request, on February 26, 1965, was refused by the village solicitor.   Plaintiff alleges that the ordinance in question was enacted November 19, 1964, granting the cable company, an Ohio corporation but not a public utility, a 20-year nonexclusive franchise or right to string, locate or run coaxial cable, messenger cable, and guy wires in, through, over, under and from the streets, sidewalks and alleys of Ontario, to supply signals to the citizens, firms and corporations of the village, and to erect, operate or in any way acquire the use of, as by licensing, leasing, lines and necessary equipment, as poles, cables, wires, boosters and other electrical devices, and the right to make house and building connections to subscribers, through, in, over and from streets, sidewalks and alleys.

Plaintiff alleges further an abuse of corporate powers by unlawful delegation of council's legislative authority to the mayor by providing in the ordinance: "Before the grantee sets poles on village property, it shall file with the village notice of its intention, which notice shall specify the exact location, height

and dimensions of the poles. Said poles shall not be erected until such specifications have been approved by the Mayor.''

Further, that pursuant to said ordinance the village has permitted the cable company to erect poles on public grounds and within the right of way of public streets and highways, in violation of property rights of abutting owners, diverted the purpose for which the streets and highways were dedicated, and have increased the burden upon the easement for street and highway purposes.

Plaintiff alleges further the above acts constitute an unconstitutional taking of property without compensation, and by reason thereof he and all other taxpayers have and will suffer irreparable damage. He prays for relief by way of injunction, that the ordinance be declared null and void, and for an order to remove all poles and structures in or over the public property in the Village of Ontario.

There are some legal propositions we should keep in mind in approaching the problems raised by the demurrer.

There are two distinct sets of legal rights relative to the property owner abutting upon a municipal street or highway: (a) Public rights, common to the public and consisting generally of the right to the use of the street or highway for transportation, travel, communications, etc., (b) private rights, bottomed upon the principle that the right of property includes the use and enjoyment of the tangible thing. Such private rights are access, light and air. *Stone* v. *Cuyahoga Light Co.*, 9 N. P. (NS.) 545, 20 O. D. (N. P.) 130; *Smith* v. *Central Power Co.*, 103 Ohio St. 681.

In Ohio an abutting property owner in the country holds fee title to the middle of the highway or street subject to an easement for highway or street uses and purposes; while in municipalities, the municipality holds fee title to the entire street or highway in trust to the uses and purposes for which it was dedicated. Thus, there exists a legal difference between the rights of the abutting owner in the municipality and the one in the country. *Schaaf* v. *Cleveland, Medina & Sou. Ry. Co.*, 66 Ohio St. 215; *Ohio Bell Telephone Co.* v. *Watson Co.*, 112 Ohio St. 385.

For the protection of a public right an action may not be brought in an individual capacity, and it is not the purpose of

a taxpayer's action to protect a private right. *Smith Agricultural Chemical Co.* v. *Calvert*, 7 N. P. (N. S.) 103, 18 O. D. (N. P.) 583; *Alcorn* v. *Cincinnati Traction Co.*, 2 Ohio Law Abs. 524, 25 N. P. (N. S.) 523; *Roberts* v. *Easton*, 19 Ohio St. 78; *Kinnear Mfg. Co.* v. *Beatty*, 65 Ohio St. 264. Also see, 20 McQuillin, Municipal Corporations (3 Ed.) Section 34.84 and Section 20.20.

It is indicated in the petition that this action is brought as a taxpayer's suit. Also it is alleged the taking of property without compensation violates Section 19 of the Bill of Rights of the Ohio Constitution. Such rights under the Ohio Constitution are not public property rights, but private property rights. Plaintiff in his brief now asserts that personal property rights are not invloved in this case and there is only one cause of action in his case, the claim that Ontario abused its corporate powers in two distinctive manners, first, "by enacting an ordinance it had no authority to enact, and, second (assuming it did have the authority to enact such an ordinance), by wrongful delegation of legislative power to the Mayor * * * without establishing standards in the ordinance by which the delegated authority was to be exercised." It would, therefore, appear that plaintiff is now confining his action to a taxpayer's suit to protect public rights and not alleging damage to his private rights of access, light and air.

Plaintiff strongly contends a municipal corporation may exercise only such powers and authorities as granted by the Ohio Legislature. As authority, *Ampt* v. *City of Cincinnati*, 6 N. P. 401, 9 O. D. (N. P.) 394, is cited. This case, decided in 1899, held it was a well settled principle of law that a municipal as well as other corporations derive their power from the Legislature and can exercise none not confided to them. After citing this case, plaintiff then asserts that a thorough search of the state statutes fails to reveal any authority under which Ontario could have acted.

Frequently a court decision, like the light from a star that no longer exists, still appears, but time has removed the justification for its existence as a source of authority. In 1912, the people of Ohio adopted Article XVIII to the Constitution. These 14 Sections are commonly referred to as the "Home Rule Amendment." At the time of the *Ampt decision, supra,* Ohio municipalities were mere instruments of the state Legislature,

with only specifically conferred powers, or those by implication, and in the several following years was born the movement for emancipation from legislative bondage. Perhaps the most important objective of Home Rule was to give to each municipality the authority to carry out municipal functions without statutory authorization. The proper approach, therefore, to a municipal authority problem is not to determine whether such is authorized by statute, but rather to proceed on the basis that the function is authorized by the Home Rule Amendment and then determine whether such function can be restricted by the state Legislature and, if so, whether the Legislature has in fact restricted the manner in which such function can be carried out. See, Farrell-Ellis, Ohio Municipal Code (11 Ed. page 3 *et seq;* also see, 1 McQuillin, Municipal Corporations (3 Ed.), Home Rule sections.

Thirteen years after the adoption of the Home Rule Amendment, the Supreme Court held, in *Village of Perrysburg* v. *Ridgeway*, 108 Ohio St. 245, by the second paragraph of the syllabus; ''The power to establish, open, improve, maintain and repair public streets within the municipality, and fully control the use of them, is included within the term 'powers of local self-government.' '' In the opinion of the Supreme Court, begining with the last paragraph of page 255, it is stated that streets and alleys of a municipality are what the arteries and veins are to a man, and, if there is any virtue to democracy, why would not that control be placed in the community. For rather recent cases concerned with the authority under home rule, see: *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297; *Union Sand & Supply Corp.* v. *Village of Fairport* (1961), 172 Ohio St. 387; *Leavers* v. *City of Canton* (1964), 1 Ohio St. 2d 33. The *Leavers case* rather sums up the present law by stating at page 37 that an ordinance, which is not a police regulation, but is concerned with local self-government regulation, is valid where there is no state statute at variance with the ordinance. Whether the Ontario ordinance in the instant case be deemed a police regulation or a non-police regulation, it would be permitted under home rule unless it is at variance with state law.

This court finds no statutory authority prohibiting the granting of a right to use a portion of its streets to a commercial enterprise of a nonpublic utility character. Even should

plaintiff be correct that some statutory authority must affirmatively exist with reference to authority over streets, reference is made to Sections 723.01, 715.22, and 723.03 *et seq.*, Revised Code.

This court is of the opinion Ontario had the power and authority to enact the ordinance at issue in the instant case. Did such enactment constitute an abuse of the public trust upon which municipal streets are held, or, in other words, did the granting of the right to use a portion of the streets or highways violate the uses and purposes for which municipal streets and highways were intended upon dedication?

Plaintiff cites *Callen* v. *Columbus Edison Electric Light Co.,* 66 Ohio St. 166, to bolster his argument that poles, wires, etc., placed upon a municipal street by a private company to furnish light and energy to private users is an abuse of the public purposes, and that such use is a taking of property without compensation contrary to Section 19 of the Bill of Rights and cannot be authorized by municipal consent. In *Smith* v. *Central Power Co.,* 103 Ohio St. 681, the Supreme Court said the statement of facts in *Callen, supra,* is unsatisfactory and the conclusions reached are somewhat confusing. Careful study of the *Callen case* leaves the conclusion that the case can be taken only for the proposition that if private rights of the abutting owner of access, light and air, are taken without compensation, such can be enjoined, whether the taking was for private or public purposes. This case cannot be interpreted as holding that private uses of the streets by private companies are *ipso facto* enjoinable as abuses of the public trust purposes for which the streets were dedicated. Further, in the *Callen case* the action was brought as an individual for violation of private rights. Also see *Stone* v. *Cuyahoga Light Co.,* 9 N. P. (N. S.) 545, 20 O. D. (N. P.) 130.

Has there been an uncontrolled delegation of legislative authority to the Mayor of Ontario without establishing any standards of control? *Northern Boiler Co.* v. *David,* 157 Ohio St. 564, is cited by plaintiff. It is distinguishable from the instant case. Upon the facts in *Northern Boiler,* it is a sound decision. Therein the individual members of council were granted authority over the service director with relation to the permit issuance to cut curbs for driveways in their respective

wards, and a councilman was simply required to notify the director of his objection and the permit could not then be issued without action by the entire council.

In the instant case the ordinance provides:

"The said grantee, its successors and assigns and at its sole cost and expense, shall replace all streets, alleys, sidewalks, public grounds and public places on and which any work shall be done under the provisions of this Ordinance in an as good order and condition as the same were before the doing of such work, * * *.

"All lines, equipment and connections shall be erected and operated in such manner as not to interfere with travel on the streets, sidewalks, alleys and public grounds or places in said City.

"In the mode of use of the surface, sub-surface, space above, below or adjoining the streets, sidewalks and alleys of said City, the Grantee shall, at all times, be subject to and comply with all proper and legal Ordinances, Regulations and Rules of said City now existing or hereinafter enacted.

"Poles, Posts and other structures of telephone companies, power companies and others which may be made available to grantee by such companies, for leasing or licensing shall be used to the extent practicable in order to minimize interference with travel."

The ordinance provides further that grantee, before erecting any poles, must give notice to the municipality for approval. No individual discretion is lodged in the approving authority to approve or disapprove. His function is controlled by established standards as set forth in the legislation. Approval is therefore predicated upon compliance with said standards and controls, not upon the fiat of the approving authority. Further, there is authority to require relocation of poles, cables, etc., on the part of the municipality, whenever required for public improvements or other public purposes. It is the opinion of this court that there is no unlawful delegation of authority and that sufficient controls and standards are established.

On behalf of the Village Council of Ontario, may I say that progressive developments offer promise of a dream born more than a century ago, when the first crude telegraph suggested that man might someday far outreach the limitations of

his speech and hearing. Maturity saw first the telegraph, then the telephone, then the radio and then radio matured into television. What appears to be remarkable success at one time, may be only the beginning. The automobile, in not too distant years, caused shouts of infringement upon existing easements. Our startling communications explosion staggers the imagination with satellite-relayed developments. Skills of giant computers may bring skills into international automation of industry, medical specialists may keep in constant contact, plus great possibilities in the educational field. History proves that often the benefits bestowed, including new methods of using an old easement, shatter the logic of original hostility.

It has been written that he who will not apply new remedies must expect new evils. The village administration of Ontario has been criticised by the public for passing the legislation that is the subject of this lawsuit. Those who love the legislative procedure of our American Government will never concede that this republic of ours is anything but a glorious beacon kindled by patriot hands in the western sky to show the sons of men everywhere the pathway to liberty, to order and prosperity. I do not conclude, as the plaintiff contends, that this legislation is but a beacon kindled by the hands of cupidity upon the rocks of destruction, disorder and dishonor. I will always believe that as long as civilization lasts the legislative process will continue to lead mankind in the pathway of honest dealing and wise legislation.

I cannot say, nor is it my right to do so, that this legislation was wise and to the best interest of the village of Ontario. I do say that it was enacted by honorable men doing what they thought was sound and wise and as such they should receive the sanction of law to which their action is entitled under law as it has been justly written that a court, even if he has a mind to do so, must not substitute his judgment for that of a legislature duly elected and qualified, that has spoken in its official capacity. When the officials of Ontario spoke, as part of the democratic process, they placed their official act to the judgment of the people. If the people approve, they will react at the polls. If they do not, they may replace any or all of the lawmakers involved. A court *must* and/or *may not* meddle with their judgment.

I have had anonymous letters, calls, etc., on this case seeking to influence my judgment. I say to all that the power of judges is not to be feared. Judge Curtis in deciding *United States* v. *Morris*, in a United States Circuit Court back in 1851 had a similiar problem. Out of that case and the mind of that great judge came the principle that summarized and, applied to this case, holds that as long as the judges of the United States are obligated to express their opinions publicly, to give reasons for them when called upon in the usual mode and to stand responsible for them, not only to public opinion but to a court or courts of higher authority, I can apprehend very little danger of the laws being wrested to purposes of injustice. But on the other hand, I do consider that this power and corresponding duty of the court, authoritatively to declare the law, is one of the safeguards of the citizens of Ontario and elsewhere. The sole end of courts of justice is to enforce the laws uniformly and impartially, without respect of persons or times or the opinions of men.

To enforce popular laws is easy, but when an unpopular decision of a legislative body is a lawful act although highly unpopular and must be enforced, then comes the strain on the administration of justice. I quite frankly am human enough to be tempted to rule with what probably is the majority sentiment of Ontario, but I respect, as I always have and intend to do in the future, my oath of office more than the will of my constituents.

Perhaps there is another remedy to be sought individually by those dissatisfied with this opinion, but it is not thus far properly sought in this action and therefore is not and will not be considered at this time by this court.

It is the opinion of this court then that the demurrer herein, should be, and hereby is, sustained. Plaintiff is given 30 days to amend, if desired.

*Demurrer sustained.*