VERNON ET AL., APPELLANTS, *v.* WARNER AMEX CABLE COMMUNICATIONS, INC. ET AL., APPELLEES.

[Cite as Vernon *v.* Warner Amex Cable Communications, Inc. (1986), 25 Ohio St. 3d 117.]

(No. 85-932—Decided July 23, 1986.)

*Knowlton, Sanderson, Ragan, Cady, Corbett & Drexler* and *Joseph C. McLeland,* for appellants.

*Harold K. Stubbs,* director of law, and *Caroline Williams,* for appellee city of Akron.

*Amer, Cunningham, Brennan Co., L.P.A., Jack Morrison, Jr.,* and *Nickolas P. Andreeff,* for appellee Warner Amex Communications, Inc.

*Per Curiam.* Appellants contend that a legislative body cannot declare

something to be a "public utility" which clearly is not. In support of this position, appellants rely on *Greater Fremont, Inc.* v. *Fremont* (N.D. Ohio 1968), 302 F. Supp. 652, 665, where it was stated in *dictum* that a CATV was not a public utility. Appellants essentially argue that R.C. 5727.01, 4905.02 and 4905.03 provide statutory definitions of what is a public utility, and that a CATV is not included in any of these definitions. Appellants further submit that Sections 3 and 7, Article XVIII of the Ohio Constitution, more popularly known as the "home rule" provisions, do not rescue the city from its actions because the ordinances in issue, according to appellants, conflict with the general laws enunciated in the three cited statutory sections.

Appellees both submit that the subject ordinances are a valid exercise of the municipality's police powers, and do not conflict with the general laws of the state. Appellees contend that the statutory definitional provisions are applicable only to the statutory chapters in which they appear, and that the definitions of what constitutes a public utility within those provisions was not intended as an exhaustive or exclusive listing to be applied in all cases.

The dispositive issue before us is not whether a CATV is a public utility in the traditional or statutory sense; most courts have rightly held that CATVs are not within the traditional definition of public utility. See, *e.g.*, *Montville Bd. of Twp. Trustees* v. *WDBN, Inc.* (1983), 10 Ohio App. 3d 284; and *Fremont, supra*. Rather, the determinative issue before this court is whether a municipality may authorize and characterize a CATV as a public utility within its environs, in a manner consistent with its home rule and police powers. For the reasons that follow, we hold that pursuant to its home rule and police powers, the city possesses the ability to designate CATVs as a public utility, since such designation does not run afoul of the city's charter or the general laws of the state.

In reviewing the charter and ordinances of the city of Akron, we find that the term "public utility" is not accorded any specific definition. However, under Sections 39 and 42 of the Akron City Charter, the city does implement the term "public utility" in requiring that such enterprises obtain franchises, and in allowing them to use public properties without the consent of the abutting landowners.

We reject appellants' assertion that a public utility is necessarily limited to the definitions set forth in R. C. 4905.02, 4905.03 and 5727.01, because those definitions are relevant solely to the statutory chapters in which they are located.

Appellees contend that we should follow our precedent in *Southern Ohio Power Co.* v. *Pub. Util. Comm.* (1924), 110 Ohio St. 246, where this court stated in paragraph two of the syllabus:

"To constitute a 'public utility,' the devotion to public use must be of such character that the product and service is available to the public

generally and indiscriminately or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state."

Similar to the statutory sections cited by appellants, our definition in *Southern Ohio Power Co.* is helpful in determining what constitutes a "public utility." However, such definitions are not dispositive of the central issue in this cause. As stated before, while we believe that CATVs are not "public utilities" in the traditional sense, we are persuaded that such a system could be reasonably classified as something analogous to traditional public utilities. See *Fremont, supra,* at 656. Nevertheless, the semantics employed in the city ordinances, and the arguments raised by all parties concerning what is or is not a "public utility," do not sufficiently answer the core question of the instant controversy, *i.e.,* whether the city's authorization and regulation of CATVs constitutes a proper exercise of its police and home rule powers.

Section 3, Article XVIII of the Ohio Constitution provides that:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 7 of Article XVIII states that:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

In *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, this court held in paragraph two of the syllabus:

"The power to establish, open, improve, maintain and repair public streets within the municipality, and fully control the use of them, is included within the term 'powers of local self-government.' "

In *Ohio Bell Tel. Co.* v. *Watson Co.* (1925), 112 Ohio St. 385, it was stated at 389:

"The fee to streets within municipalities in Ohio rests in trust in the municipality for street purposes, subject to the abutting owner's rights to ingress and egress, light, and air. * * *"

The foregoing precedents leave no doubt that the regulation of the use of publicly owned or controlled property is an inherent exercise of a municipality's powers of local self-government, which necessarily include the municipality's police powers. See, also, *DiBella* v. *Ontario* (1965), 4 Ohio Misc. 120 [33 O.O. 2d 170].

There is also no question that the grass strips located in the city's right-of-ways, upon which the grey metal boxes are located, are the property of the city in which appellants have no easements, and which the city can allow Warner to use, in order to insure a safe and efficient CATV distribution system. See *Gas Light & Coke Co.* v. *Columbus* (1893), 50 Ohio St. 65; and *DiBella, supra.*

Since the city has the inherent power to regulate the grass strips upon

which Warner's grey metal boxes are situated, our final inquiry is whether the city's designation of a CATV as a "public utility" is in conflict with the general laws of the state.

Having already determined that R.C. 4905.02, 4905.03 and 5727.01 do not provide the exclusive definitions of what constitutes a public utility, it follows that the city ordinances in issue are not in conflict with these general laws of the state. By the same token, we are unable to find any other statute that could even remotely conflict with city ordinances in issue. Therefore, we hold that Akron Ordinances 818.01 and 818.02 do not conflict with the general laws of the state of Ohio.

Turning our attention to the city's designation of a CATV as a "public utility," we are persuaded that such designation, while non-traditional, was nevertheless a proper exercise of the city's home rule and police powers. As noted by the court of appeals below, "* * * [t]he inclusion of CATV systems within the meaning of the phrase 'public utility' is a logical one, because in the development and operation of a CATV's own distribution network, it is very much like the more traditional public utilities and begs for the same regulation to ensure that the system of cables, wires, and poles is erected and maintained in a safe and efficient way. * * * [*Fremont, supra*]. It is within a municipality's power to protect the public health and welfare regulating the establishment and maintenance of a CATV's distribution network. * * *"

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.

DOUGLAS and WRIGHT, JJ., concur in judgment only, with opinion.

DOUGLAS, J., concurring. I concur. I write separately to make several points.

First, I think the majority opinion, if it holds that appellee Warner is a public utility (and that is not at all clear), is wrong in such conclusion. Since the issue is not dispositive of the case, very little discussion need be given the question. Suffice to say that R.C. Chapter 5727 deals with "public utilities." R.C. 5727.01(A) reads:

" 'Public utility' includes each corporation, firm, individual, and association, its lessees, trustees, or receivers elected or appointed by any authority, and referred to as an express company, telephone company, telegraph company, freight line company, equipment company, electric light company, gas company, natural gas company, pipeline company, water works company, messenger company, union depot company, water

transportation company, heating company, cooling company, rural electric company, or railroad company. Public utility includes any plant or property owned or operated by any such company, corporation, firm, individual, or association." See, also, R.C. 4905.02.

Conspicuous by their absence, for purposes of this case, are community antenna television systems ("CATV").

R.C. Chapter 5727 requires the valuing, for tax purposes, of the property of public utilities. R.C. Chapter 4905, and specifically R.C. 4905.04, gives the Public Utilities Commission the authority to supervise and regulate public utilities. R.C. Chapter 4909, and specifically R.C. 4909.15, vests jurisdiction in the Public Utilities Commission to fix rates. It is my guess that the majority decision holding that appellee Warner is a public utility will come as a surprise — and complete shock — to all CATV operators. Of course, they need not worry because upon thoughtful scrutiny, the majority opinion on this question will never withstand a proper legal analysis. In reality, not even appellee Warner would contend it is a public utility and, except for what the designation might do for appellee in this case, it really does not want to be.

Fortunately, for all involved, the misguided discussion of the majority regarding the public utility question is not dispositive in this case nor is the confusing dialogue necessary to a resolution of the problem before us.

The simple question before us is what rights does a cablevision company, acting pursuant to a municipal ordinance granting a proper license, have to install equipment in the streets or the right-of-ways vis-a-vis the rights of abutting landowners. Since this issue has never been directly addressed by this court, we should give a clear and definitive answer so that all parties with an interest in the subject will know, without question, what the highest court of this state's position is on the issue.

Herein we are involved with a street within the municipality of the city of Akron. In regard to municipal streets, the rule in Ohio is that the fee title of the street and right-of-way is in the city. See *Hamilton, Glendale & Cincinnati Traction Co.* v. *Parish* (1902), 67 Ohio St. 181. See, also, R.C. 711.07. I concede that the law has been that the city holds the fee in trust for street purposes and that abutting owners have certain rights therein. Thus, the municipal corporation has a fee title in the right-of-way, but the fee is a qualified or determinable one. In light of our modern-day society and its needs, as well as the home-rule powers of municipal corporations, we should hit the issue head-on and review the thinking and the authority regulating the use of the streets and the dedicated abutting right-of-way land.

Without a need to even cite the cases, we know that the street right-of-way may be used, under proper municipal authority, for the installation of poles, cables, wires and pipes for the delivery by "public utilities" of gas, electricity, telephone, water and sewer services. As our population has increased, so have the demands and needs of our people for other

necessities, conveniences and luxuries of our modern day. So long as we do not substantially restrict the property owner's right of access to light, air and view, the right-of-ways should be usable for the public good and benefit as determined by the local legislative authority.

This general proposition has, in fact, already been endorsed by this court. While the question involved water lines and property outside a municipal corporation, this court, in an enlightened opinion in *Ziegler* v. *Ohio Water Serv. Co.* (1969), 18 Ohio St. 2d 101, 106 [47 O.O.2d 244], stated:

"We are unable to discern any substantial burden visited on plaintiff's property by the intended construction. A denial of the use of a highway for the purpose of transporting water to areas where it is needed, as in the instant case, would be the rejection of evolutionary change. * * * We therefore hold that the construction of water pipes in real property, for which an easement for highway purposes has been given, is not an added burden on such land, for which the owner must be compensated. * * *"

As in this case, the defendant in *Ziegler* was a private corporation for profit, but the court said that a "public purpose" would be presumed since the project was undertaken with the approval and authority of the local governing body. It is my judgment that this same rationale applies to CATV systems authorized pursuant to appropriate municipal authority.

What is that municipal authority which permits a local community, through its legislative body, to grant a license to operate a CATV system, the right, to some degree, to regulate such operations and the right to authorize and permit the use of public right-of-ways for such systems to install the necessary accoutrements necessary for the operation of such systems?

Section 3, Article XVIII of the Ohio Constitution provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Pursuant to this authority, this court held in *Perrysburg* v. *Ridgway* (1923), 108 Ohio St. 245, in paragraph two of the syllabus, that "[t]he power to establish, open, improve, maintain and repair public streets within the municipality, *and fully control the use of them,* is included within the term 'powers of local self-government.'" (Emphasis added.)

This being so, the next question becomes whether exercising such powers with regard to street right-of-ways conflicts with general laws. The answer to this subsequent question is not difficult to find. Not only does the exercise of such authority not conflict, it is in perfect harmony with state law, in that R.C. 723.01 provides, in part, that:

"Municipal corporations shall have *special power to regulate the use of the streets.* The legislative authority of a municipal corporation shall have the care, supervision, and *control* of the public highways, [and] streets, * * * within the municipal corporation * * *." (Emphasis added.)

Accordingly, it should be clear that past case authority, home-rule power through the Ohio Constitution, statutory authority and common sense dictate that if a local municipality has the power to issue a license to operate a CATV system and to regulate, to some degree, that system, then as night follows day, it should also be clear that such municipality has the right and power to authorize the installation of CATV equipment in the right-of-ways of city streets in order for the system to function.[2] I would include in such a holding not only in-ground installation but also the use of air space over such public right-of-ways. The police power of a local government extends to providing for the health, safety and general welfare of the citizens of such government and if the local legislative authority determines that the general welfare of its citizens is served by authorizing a CATV system and the use of the street right-of-ways and other public easements and right-of-ways, for installation of the equipment necessary to operate such a system, then such determination should be final.

Thus, in concurring with the majority, I would hold that where a municipal authority has authorized the installation of equipment, in public right-of-ways, to operate a CATV system and such installations do not substantially violate and interfere with an abutting landowner's limited rights of access, light, air or view, that such decision of the local authority is proper and final and is in accordance with constitutional, statutory and case law authority.

WRIGHT, J., concurs in the foregoing concurring opinion.

---

[2] This point of view is supported further by the Cable Communications Act of 1984 which addresses the subject of use of public right-of-ways and easements by cable systems. Section 621(a)(2) of the Act states:

"Any franchise *shall* be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses * * *." (Emphasis added.)