CINCINNATI GAS & ELECTRIC CO. ET AL., APPELLEES, *v.*
KOSYDAR, TAX COMMR., APPELLANT.

(No. 73-885—Decided April 24, 1974.)

*Mr. William E. Herron, Mrs. Joan S. Ehas, Messrs. Porter, Stanley, Platt & Arthur* and *Mr. Edmund D. Doyle,* for appellees.

*Mr. William J. Brown,* attorney general, and *Mr. Dwight C. Pettay, Jr.,* for appellant.

HERBERT, J. Under R. C. 5739.02, an excise tax is levied on all retail sales made in this state. Similarly, R. C. 5741.-02 imposes an excise tax upon the storage, use or other consumption of tangible personal property within the state. The use tax, however, is not so levied if the acquisition of such property, if made in Ohio, would be a sale not subject to the retail sales tax levied by R. C. 5739.01 to R. C. 5739.-31, inclusive. R. C. 5741.02(C)(2).

R. C. 5739.01 operates to except a number of transactions from the levy of the sales tax. R. C. 5739.01(E)(2) provides, in part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

"(2) * * * to use or consume the thing transferred * * *directly in the rendition of a public utility service."

The phrase "used directly in the rendition of a public utility service" is further defined in R. C. 5739.01(Q):

"(Q) 'Used directly in the rendition of a public utility service' means that property which is to be incorporated into and will become a part of the consumer's production, transmission, transportation, or distribution system and which retains its classification as tangible personal property after such incorporation; fuel or power

used in the production, transmission, transportation, or distribution; and tangible personal property used in the repair and maintenance of the production, transmission, transportation, or distribution system, including only such motor vehicles as are specially designed and equipped for such use.''

The question presented is whether the equipment heretofore described is excepted from the retail sales and use taxes by reason of R. C. 5739.01(E)(2) and 5739.01(Q).

Prior to the addition of subsection (Q) to R. C. 5739.01 on September 1, 1967, the scope of the public utility exception was delineated by the pronouncements of this court in *Athens Home Telephone Co.* v. *Peck* (1953), 158 Ohio St. 557, 110 N. E. 2d 571; *Erie Rd. Co.* v. *Peck* (1953), 160 Ohio St. 322, 116 N. E. 2d 304; and *Warren Telephone Co.* v. *Bowers* (1962), 173 Ohio St. 164, 180 N. E. 2d 595. The test propounded by these cases was, ''whether the purchased items were essential or indispensable in keeping the utility in continuous operation for the provision of service to the public.'' *Ohio Edison Co.* v. *Porterfield* (1971), 28 Ohio St. 2d 150, 277 N. E. 2d 195.

As to acquisitions of property occurring after September 1, 1967, the test for determining whether such acquisitions are within the public utility exception of R. C. 5739.01(E)(2) is a statutory one. The question is whether the property acquired is to be ''used directly in the rendition of a public utility service,'' as that phrase is defined in R. C. 5739.01(Q).

The commissioner contends that by reading R. C. 5739.01(E)(2) and (Q) together, these sections provide that the exception from taxation is available only where the tangible personal property is *directly used* in the production, transmission, transporting or distribution system of the public utility. Stated another way, the commissioner urges that only property which is directly involved with the actual production of a flow of electricity is excepted from taxation; he argues that property which is incorporated into the production system, but that is concerned with steps preparatory to the actual production of electricity, is not excepted.

76

The commissioner places principal reliance upon *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 283 N. E. 2d 434. *Canton Malleable* was concerned with the "direct use in manufacturing" exception to sales tax, also provided by R. C. 5739.01(E)(2), and the effect upon that exception of the addition of R. C. 5739.01(S), enacted at the same time as subsection (Q). Reading R. C. 5739.01 (E)(2) and (S) in a complementary fashion, the court concluded that those sections established dual standards for coming within the direct use in manufacturing exception, both of which had to be met before acquisitions of property were excepted from the sales tax.

However, the commissioner's argument ignores the differences in the language of subsections (Q) and (S), and in the wording of R. C. 5739.01(E)(2) establishing the manufacturing and public utility exceptions. R. C. 5739.01(S) simply defines two of the terms used to delineate the direct use in manufacturing exception, otherwise leaving the original language of R. C. 5739.01(E)(2) as it existed prior to the adoption of subsection (S). R. C. 5739.01(Q), on the other hand, defines the entire basis for the public utility exception of R. C. 5739.01(E)(2).

Thus, when determining whether the acquisition or use of property is excepted from the retail sales or use taxes as property "used directly in the rendition of a public utility service," the determination depends upon whether the property satisfies one of the three standards of R. C. 5739.01(Q).

In this context, the term "production system" is comprised of those items of tangible personal property, and only those items, which are essential to the continuous production of the public utility service.

The instant record establishes that the property involved has been incorporated into steps in the process of generating electricity, and that the property is essential to the continuous production of that public utility service. It is uncontroverted that it has retained its classification as tangible personal property. Therefore, all the necessary requirements for exception imposed by R. C. 5739.01(Q) have been met. Similarly, it was established that the cranes and hoists were tangible personalty which performed neces-

sary repair and maintenance work on property which has been incorporated into the production system.

In view of the foregoing, the decision of the Board of Tax Appeals is neither unreasonable nor unlawful and is affirmed.

*Decision affirmed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.