THE CLEVELAND ELECTRIC ILLUMINATING CO., APPELLANT,
*v.* LINDLEY, TAX COMMR., APPELLEE.

[Cite as Cleveland Electric Illuminating Co. v. Lindley (1982),
69 Ohio St. 2d 71.]

(No. 81-495—Decided January 27, 1982.)

72

*Mr. Craig I. Smith,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Charles M. Steines,* for appellee.

*Per Curiam.* R. C. 5741.02(A) imposes an excise tax on the storage, use, or other consumption in this state of tangible personal property. CEI contends that its use of the leased gondola cars is exempt from use taxation pursuant to R. C. 5741.02, which states:

"(C) The [excise] tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property,

" * * *

"(2) Tangible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code."

Transactions which are exempt from sales tax are also exempt from use tax, as R. C. 5741.02(C)(2) incorporates by reference the sales tax exceptions of R. C. Chapter 5739.01. *General Motors* v. *Kosydar* (1974), 37 Ohio St. 2d 138, 146. One such sales tax exception is created by R. C. 5739.01, which states, in part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

" * * *

"(2) To * * * use or consume the thing transferred * * * directly in the rendition of a public utility service * * *."

Thus, use of the gondola cars acquired by CEI under the lease agreements is exempt from use taxation if CEI's purpose in entering into the lease was to use the gondola cars "directly in the rendition of a public utility service." That phrase is statutorily defined in R. C. 5739.01(Q), which provides:

" 'Used directly in the rendition of a public utility service' means *that property which is to be incorporated into and will become a part of the consumer's production,* transmission, transportation, or distribution *system and which retains its classification as tangible personal property after such incorporation;* fuel or power used in production, transmission, transportation, or distribution; and tangible personal property used in the repair and maintenance of the production, transmission, transportation, or distribution system, including only such motor vehicles as are specially designed and equipped for such use." (Emphasis added.)

Because it is undisputed that the gondola cars remained tangible personal property at all relevant times, the determinative issue to be resolved below was whether it was CEI's purpose in leasing the cars to incorporate them into its production, transmission, transportation or distribution system.

This court interpreted R. C. 5739.01(Q) in *Cincinnati Gas & Electric Co.* v. *Kosydar* (1974), 38 Ohio St. 2d 71. This court held that, for purposes of the statute, the term "production system" includes only those items of tangible personal property which are *essential* to the continuous production of the public utility service. On the basis of this holding, the Board of Tax Appeals denied CEI's claimed exemption, reasoning that it was not "essential" to the continuous production of electricity by CEI that CEI lease additional gondola cars. In its opinion the board stated that:

"Alternatives to the use of gondola cars did and do exist. The Appellant could for example utilize the Norfolk & Western Railroad, an admittedly excellent railroad, to transport coal to within 60 miles of the Eastlake plant and then switch the cars to the Penn Central Railroad for the final leg of the journey * * * . The use of Norfolk & Western Railroad facil-

ities and equipment might have removed the car shortage difficulties and, at the same time, reduced the transportation time due to an elimination of excessive yard switching and perhaps reduce the number of cars necessary to transport the Appellant's coal demand * * * .

" * * * [T]his Appellant may have had equipment available for its use from other railroads so that it may not have been required to lease the gondola cars in question."

We agree with CEI's contention that the board's interpretation of *Cincinnati Gas & Electric* v. *Kosydar, supra,* is too narrow. The board unduly emphasized the fact that possible alternatives existed to CEI's leasing additional cars. Under *Cincinnati Gas & Electric, supra,* property may be "essential" to the continuous production of the utility service even though the utility might theoretically have provided its service without having acquired the property at issue. The existence of a use tax exemption is not contingent upon the wisdom of a management decision to acquire certain property. Nor must a utility prove, in order to satisfy the essentiality test, that the continued production of its service was totally dependent upon the acquisition of the property. Under R. C. 5739.01(Q) it is enough that the property, once acquired, actually is incorporated into and used as part of a vital or essential step in the production process.

It is evident that the assured and continuous delivery of coal to the Eastlake plant was such an essential step. The record supports the conclusion that, had the needed coal not been delivered by one means or another, the continuous production of electricity would have been jeopardized. There is no contention that these railroad cars were used by CEI for any purpose other than to satisfy this essential need for coal deliveries. The board thus erred in finding that the gondola cars were not "used directly in the rendition of a public utility service" as defined in R. C. 5739.01(Q). Use of the cars should have been found to be tax-exempt.

CEI further contends that the board erred in refusing to consider on appeal its contention that the commission unlawfully assessed taxes totaling $5,504.98 based on the material maintenance charges associated with the gondola cars. The board, in effect, concluded that this assessment was

not placed in issue pursuant to R. C. 5717.02, which provides, in part:

"*  *  *  * *The notice of appeal* shall set forth or have attached thereto * * * a true copy of the notice sent by such commissioner to the taxpayer of the final determination complained of, and *shall also specify the errors therein complained of.*" (Emphasis added.)

Appellant's notice of appeal to the board provided, in pertinent part:

"Such order or assessment is erroneous in that the Tax Commissioner acted unreasonably and contrary to law by determining that the *gondola cars,* described at Exhibit A, part I of Appellant's Petition for Reassessment (filed April 5, 1977), *were not used directly in the rendition of a public utility service.* Such determination is in conflict with the provisions of Section 5741.02(C)(2), Ohio Revised Code, and Section 5739.01(E)(2), and (Q), Ohio Revised Code, in that such gondola cars were incorporated into and has [*sic*] become a part of appellant's production, transmission or distribution system and have retained their classification as tangible personal property after such incorporation." (Emphasis added.)

Under R. C. 5717.02, a notice of appeal does not confer jurisdiction upon the Board of Tax Appeals to resolve an issue, unless that issue is clearly specified in the notice of appeal. *Lenart* v. *Lindley* (1980), 61 Ohio St. 2d 110; *Gochneaur* v. *Kosydar* (1976), 46 Ohio St. 2d 59; *Abex Corp.* v. *Kosydar* (1973), 35 Ohio St. 2d 13. This court will not reverse a decision of the board where the notice of appeal to the board does not enumerate in definite and specific terms the precise errors claimed. *Queen City Valves* v. *Peck* (1954), 161 Ohio St. 579; *Gochneaur* v. *Kosydar, supra.*

We agree with the board that CEI's notice of appeal failed to clearly and specifically allege as error assessment of tax based on the material maintenance charges. As is evident from the notice of appeal, CEI challenged the reasonableness and legality of the commissioner's finding that the gondola cars were not used directly in the rendition of a public utility service. The findings of the commissioner relating to maintenance charges were not challenged or otherwise mentioned in the notice of appeal. The holding proposed by CEI, that the board

acquired jurisdiction to determine *all* transactions relating to the gondola cars, would contravene the specificity requirements clearly established by precedent.

For the foregoing reasons the decision of the Board of Tax Appeals is affirmed in part and reversed in part.

*Decision affirmed in part*
*and reversed in part.*

CELEBREZZE, C. J., W. BROWN, SWEENEY and LOCHER, JJ., concur.

HOLMES, C. BROWN and McCORMAC, JJ., concur in part and dissent in part.

McCORMAC, J., of the Tenth Appellate District, sitting for KRUPANSKY, J.

HOLMES, J., concurring in part and dissenting in part.

I concur in that part of the judgment of this court which reverses the Board of Tax Appeals on the issue of the tax exempt status of the gondola cars.

I dissent from that part of this court's opinion regarding the adequacy of the notice of appeal. Again, this court is being hypertechnical as to the content of a notice of appeal. Here, the notice of appeal reasonably encompasses all parts of the lease of the transportation equipment. It should have been obvious to the commission that the obtaining and use of the gondola cars in question would reasonably require maintenance and servicing, either as an included part of the lease contract, or by way of a separate contract, as here.

The notice of appeal here was fairly meant to encompass all costs relative to the gondola cars and the notice should be held to satisfy the specificity requirements of R. C. 5717.02.

C. BROWN and McCORMAC, JJ., concur in the foregoing concurring and dissenting opinion.