FRANKELITE COMPANY, APPELLEE AND CROSS-APPELLANT, *v.* LINDLEY, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as Frankelite Co. *v.* Lindley (1986), 28 Ohio St. 3d 29.]

(No. 86-563—Decided December 19, 1986.)

*Thomas I. Hausman,* for appellee and cross-appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mark A. Engel,* for appellant and cross-appellee.

*Per Curiam.*

## I

In his sole proposition of law, the Tax Commissioner seeks reversal of the board's remission of the penalty. In this regard, the board held:

"The Board of Tax Appeals finds that in this particular case, the appellant [Frankelite] has sufficiently shown that the failure to remit the penalty was an abuse of discretion. Frankelite had an established history of timely filing and payment of sales tax returns. Frankelite maintained an extensive file of exemption certificates and manifested a good faith reliance on them. Frankelite fully cooperated with the tax agents during the audit and undertook a massive campaign to comply with the agents' directions and orders. In short, the record before this Board is replete with demonstrations of appellant's honest and sincere attempts to comply with the tax laws of this state. We believe that the power to remit the statutory penalty was authorized to cover situations such as this."

With respect to the imposition of a penalty, R.C. 5739.13 provides:

"A penalty of fifteen percent shall be added to the amount of every assessment made under this section. The commissioner may adopt and promulgate rules and regulations providing for the remission of penalties added to assessments made under this section."

The remission of a penalty under this provision is discretionary with the Tax Commissioner and cannot be reversed by the Board of Tax Appeals unless an abuse of discretion is demonstrated. *Interstate Motor Freight System* v. *Bowers* (1960), 170 Ohio St. 483, 485 [11 O.O. 2d 240]. In that case the court held that it was unlawful for the Board of Tax Appeals to order the remission of a penalty where it had not made a specific finding

that the Tax Commissioner had abused his discretion. In the case at bar, the board made such a specific finding, but the commissioner argues that the requirements for establishing an abuse of discretion as set forth in *Jennings & Churella Constr. Co.* v. *Lindley* (1984), 10 Ohio St. 3d 67, 70, were not met and that the board, in essence, merely substituted its own judgment for that of the commissioner.

The scope of our review of board decisions, however, as set forth in R.C. 5717.04, is limited to a determination of whether the board's decision is unreasonable or unlawful. Upon consideration of the reasons stated by the board and our review of the record, we cannot conclude that the board's factual determination leading to the remission of the penalty in this case was not in conformity with *Jennings & Churella Constr. Co., supra,* or otherwise unreasonable or unlawful.

The Tax Commissioner also relies on its guidelines contained in a policy statement on penalty remissions dated January 13, 1975 which is submitted as part of its record. This policy statement offers guidelines as to whether and to what extent a penalty may be remitted based upon the taxpayer's "percentage of compliance." First, as Frankelite points out, this policy statement does not have the force of a regulation because it was not adopted in accordance with R.C. Chapter 119. *Condee* v. *Lindley* (1984), 12 Ohio St. 3d 90; *McLean Trucking Co.* v. *Lindley* (1982), 70 Ohio St. 2d 106 [24 O.O. 3d 187]. Moreover, it does not support the commissioner's position. Assuming that the 8.5 percent error rate found by the commissioner equals a compliance of approximately 91.5 percent (how the compliance rate is determined is not established by the policy statement), then the guideline would have normally required a remission of the penalty to five percent. The policy statement also indicates that the percentages listed therein are not binding and other factors can control the decision of whether to remit the penalty.

The board's determination that the commissioner abused his discretion in failing to remit the penalty is not unreasonable or unlawful, particularly where all of the factors noted by the commissioner in the tax department's policy statement would mitigate in favor of remission.

The decision of the Board of Tax Appeals is affirmed on this issue.

## II

Frankelite raises several challenges to the Board of Tax Appeals' decision in its cross-appeal.

In its propositions of law one through three, Frankelite contends that the audit procedure was unfair and therefore it was deprived of its right to due process of law. Specifically, Frankelite contends that the Tax Commissioner should have ruled on the validity of the letters of usage received at the halfway point so that any errors could be corrected by Frankelite. Frankelite also contends that the agents were required to participate in the phone calls or meetings with customers of Frankelite as it requested. These arguments are overruled.

R.C. 5739.03 provides, in part:

"If any sale is claimed to be exempt under division (E) of section 5739.01 of the Revised Code or under section 5739.02 of the Revised Code, * * * the consumer must furnish to the vendor, and the vendor must obtain from the consumer, a certificate specifying the reason that the sale is not legally subject to the tax. * * * The certificate shall be in such form as the tax commissioner by regulation prescribes. If no certificate is furnished or obtained within the period for filing the return for the period in which such sale is consummated, it shall be presumed that the tax applies. The failure to have so furnished, or to have so obtained, a certificate shall not prevent a vendor or consumer from establishing that the sale is not subject to the tax within sixty days of the giving of notice by the commissioner of intention to levy an assessment, in which event the tax shall not apply.

"Certificates need not be obtained nor furnished where the identity of the consumer is such that the transaction is never subject to the tax imposed or where the item of tangible personal property sold or the service provided is never subject to the tax imposed, regardless of use, or when the sale is in interstate commerce."

In construing these provisions it is well-settled that the burden to establish the right to an exemption is upon the taxpayer and that the sixty-day period is provided in order to provide the taxpayer with an additional amount of time to collect the evidence necessary to establish such right. *Canton Structural Steel Co.* v. *Lindley* (1982), 69 Ohio St. 2d 33 [23 O.O. 3d 52]; *American Handling Equip. Co.* v. *Kosydar* (1975), 42 Ohio St. 2d 150 [71 O.O. 2d 120]; *Union Metal Mfg. Co.* v. *Kosydar* (1974), 38 Ohio St. 2d 53 [67 O.O. 2d 72]; *Dayton Sash & Door Co.* v. *Kosydar* (1973), 36 Ohio St. 2d 120 [65 O.O. 2d 306].

Frankelite's contention that the Tax Commissioner's agents were required to participate in phone calls or personal conversations with its customers essentially shifts the burden of collecting the necessary evidence to the commissioner. Frankelite's argument that such other evidence should be considered by the commissioner if it is presented to him is essentially correct. See *Canton Structural Steel Co., supra,* at 37; *Union Metal Mfg. Co., supra,* at 56, fn. 3. Those cases, however, do not stand for the proposition that the commissioner is required to collect that data. Frankelite could have engaged in such conversations itself and submitted tapes or transcripts of those conversations for purposes of establishing tax exemption, but it did not.

Frankelite also suggests that by failing to give a mid-audit ruling on the validity of the letters of usage obtained to that point, it was deprived of any standards for determining whether it could comply with the requirements of obtaining a valid letter of usage. The purpose of the sixty-day grace period is to collect evidence, not to conduct an adjudication of the legal significance of that evidence. The requirements for a letter of

usage are well-documented. See *Union Metal Mfg. Co., supra; Canton Structural Steel Co., supra.* Frankelite's argument that it had no standards by which to proceed fails in view of these facts.

For the same reasons, Frankelite's claim that it was denied due process because it was not afforded a right to examine witnesses during the sixty-day period lacks merit. Again, the sixty-day period is not an adjudicatory hearing where a right of confrontation obtains. The requirements of the law are that a taxpayer charge the tax unless he has a valid exemption certificate. Indeed, Ohio's statute would not fail on due process grounds if all it provided was a hearing after the assessment to determine if the taxpayer in fact had such exemption certificates. See *Beatrice Foods Co.* v. *Lindley* (1982), 70 Ohio St. 2d 29 [24 O.O.3d 68].

In its fourth proposition of law, Frankelite argues that the Board of Tax Appeals must consider all evidence of tax exemption even if it was submitted after the sixty-day period. It has been established that a taxpayer is limited to the evidence accumulated during the sixty-day period. *Union Metal Mfg. Co., supra; Dayton Sash & Door Co., supra.* Thus, this proposition is overruled.

In its fifth proposition of law, Frankelite claims that where it has made a good faith effort to obtain the letter of usage required but the customer does not cooperate, then the Tax Commissioner should collect the tax from the customer. However, as stated previously, the duty to establish the right to exemption is on the taxpayer and it was the taxpayer's duty to have had the exemption certificate at the time of sale. Frankelite contends further that the commissioner should also assume the burden of investigation where the customer claims that the tax was already paid but did not submit proof of such payment. A similar argument that the commissioner was required to investigate matters which were contained in the tax department records was specifically rejected in *Dayton Sash & Door Co.* v. *Kosydar, supra.*

We find the board used and applied the appropriate standards in this case and applied them correctly.

Accordingly, we find that Frankelite's arguments on cross-appeal lack merit and, finding the decision of the Board of Tax Appeals to be neither unreasonable nor unlawful, it is affirmed in all respects.

*Decision affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

WRIGHT, J., concurring in part and dissenting in part. Although I concur in Part II of the majority's opinion pertaining to the issues raised in

Frankelite's cross-appeal, I must respectfully dissent from Part I of the decision upholding the determination of the Board of Tax Appeals that the commissioner abused his discretion when denying the remission of the penalties.

The majority correctly relies on *Interstate Motor Freight System* v. *Bowers* (1960), 170 Ohio St. 483 [11 O.O. 2d 240], for the proposition that before the board may reverse a penalty imposed by the Tax Commissioner, it must first determine that the commissioner abused his discretion when the penalty was issued. Therein, the court reasoned as follows:

"Clearly, therefore, *before the Board of Tax Appeals can order the remission of a penalty imposed by the Tax Commissioner * * * it must affirmatively find that the Tax Commissioner abused his discretion in refusing to remit the penalty.*

"The determination by the Board of Tax Appeals that the orders of the Tax Commissioner assessing such penalties are unreasonable and contrary to law does *not* in and of itself constitute a finding that the Tax Commissioner abused his discretion in making such order.

"The Board of Tax Appeals failed to determine that the Tax Commissioner abused his discretion in assessing the penalties. It follows that the board's decisions, which in effect remit the penalties, are unreasonable and contrary to law and must be reversed." (Emphasis added.) *Id.* at 485.

It is well-settled in Ohio that the term "abuse of discretion" connotes more than an error of judgment. Instead, the term implies, in relation to interfering with the discretionary power of administrative officers, that there has been a " 'perversity of will, passion, prejudice, partiality, or moral delinquency' " which affected the decision-making process. *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590-591 [50 O.O. 465], quoting from *People* v. *N.Y.C. RR. Co.* (1864), 29 N.Y. 418, 431, and *Alliance* v. *Joyce* (1892), 49 Ohio St. 7, 22. See, also, *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 193.

In the present case, the board reasoned that the taxpayer had made an honest and sincere attempt to comply with Ohio's tax scheme based on its prior tax payments, the maintenance of numerous exemption certificates, and its cooperation with tax agents during the course of the audit. Although the taxpayer's actions subsequent to the assessment may have been laudable, such actions, standing alone, are not sufficient to render the commissioner's decision an abuse of discretion. The board's findings demonstrate, at most, that the commissioner's refusal to remit the penalties was unreasonable. Although it is perhaps unfortunate for the taxpayer, the commissioner's "unreasonableness" does not constitute authority for the board to label that decision as constituting an "abuse of discretion" and then, while substituting its discretion for that of the commissioner, proceed to order a remission. *Interstate Motor Freight System* v. *Bowers, supra.*

Here, the record is devoid of evidence that the commissioner abused his discretion when the penalties were not remitted. Accord *Plowden & Roberts, Inc.* v. *Porterfield* (1970), 21 Ohio St. 2d 276 [50 O.O. 2d 497]. In other words, there has been no showing that the commissioner's determination was influenced by passion, prejudice or partiality. It therefore follows, in accordance with the principle articulated in *Interstate Motor Freight System* v. *Bowers, supra,* that the board's decision to remit the penalty was unreasonable and unlawful and must be reversed.