COUSINO CONSTRUCTION COMPANY, APPELLEE AND CROSS-APPELLANT,
*v.* WILKINS, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Cousino Constr. Co. v. Wilkins,*
108 Ohio St.3d 90, 2006-Ohio-162.]

(No. 2004–1560—Submitted October 11, 2005—Decided February 1, 2006.)

ALICE ROBIE RESNICK, J.

{¶ 1} We are asked to decide in this appeal as of right whether Cousino Construction Company owes use taxes on its use of services provided by professional cleaners who removed soot, dirt, and odors from buildings that Cousino reconstructed and restored.

{¶ 2} The Tax Commissioner and the Board of Tax Appeals ("BTA") found that Cousino used or consumed taxable janitorial services and did not resell those services to others. The BTA ruled that the R.C. 5739.01(E) resale exception to the sales and use tax therefore did not apply. We affirm the decision of the BTA on those issues, which are the focus of Cousino's cross-appeal.

{¶ 3} On the other issue in the case, the Tax Commissioner and the BTA disagreed. The Tax Commissioner found that Cousino was not entitled to a tax exemption under R.C. 5739.02(B)(13), which provides a sales- and use-tax exemption for the sale of any materials or services to construction contractors when those materials or services are to be incorporated into a government-owned building. The BTA reached the opposite conclusion, finding that the exemption did apply and that Cousino therefore did not owe use taxes on its use of the janitorial services that it purchased.

{¶ 4} We reverse the decision of the BTA on this issue without reaching the merits because Cousino did not preserve the issue in its notice of appeal filed with the BTA, and the BTA therefore had no jurisdiction to consider it.

## Facts

{¶ 5} Cousino Construction Company of Perrysburg, Ohio, is a general contractor that helps restore homes, offices, and cars damaged by fires, floods, and other disasters. Subcontractors hired by Cousino typically provide a thorough cleaning

of a damaged site to remove soot, smoke, odors, mold, and water, and then Cousino's employees reconstruct the site with drywall, paint, floor coverings, and any other materials and services needed to return the structure to its original condition.

{¶ 6} In 1997, the Tax Commissioner conducted an audit of the purchases reported by Cousino for the period July 1, 1993, through December 31, 1996, and concluded that the company owed more than $46,000 in unpaid use taxes, penalties, and interest charges. Cousino paid some of the assessed taxes but objected to others in a petition for reassessment. A hearing was held before the Tax Commissioner in May 1999.

{¶ 7} After that hearing, the Tax Commissioner prepared a written decision in which he rejected the objections raised by Cousino. The Tax Commissioner concluded that Cousino owed use taxes on janitorial services that it had purchased from several subcontractors and found that the resale exception to the use tax did not apply to Cousino because the services provided to Cousino were not resold by it in the form in which they were received, as the resale exception requires.

{¶ 8} Cousino appealed to the BTA, which held a hearing on the matter in July 2003. Cousino presented the testimony of two witnesses. The BTA sided with the Tax Commissioner on the question whether Cousino was exempt from use taxes under the R.C. 5739.01(E) resale exception, but agreed with Cousino that the company's purchases of cleaning services for the restoration of school buildings were exempt from taxation under R.C. 5739.02(B)(13). The latter provision states that some services sold to construction contractors and incorporated into a structure under a contract with a governmental entity are not subject to sales or use taxes.

{¶ 9} The Tax Commissioner appealed from the latter portion of the BTA's decision, and Cousino cross-appealed from the former.

## Standard of Review

{¶ 10} In reviewing a BTA decision, this court looks to see whether that decision was "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783; R.C. 5717.04. The court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna–Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. But "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," this court will affirm them. *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 11} As for the burden of proof, it rests on the taxpayer "to show the manner and extent of the error in the Tax Commissioner's final determination." *Standards Testing Laboratories, Inc. v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30. The Tax Commissioner's findings "are presumptively valid, absent a demonstration that those findings are clearly unreasonable or unlawful." *Nusseibeh v. Zaino,* 98 Ohio St.3d 292, 2003-Ohio-855, 784 N.E.2d 93, ¶ 10. Any claimed exemption from taxation "must be strictly construed," and the taxpayer "must affirmatively establish his or her right" to the exemption. *Campus Bus Serv. v. Zaino,* 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 8.

## Ohio's Use Tax

{¶ 12} Under R.C. 5741.02(A)(1), a tax is levied on "the storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided." However, if the acquisition of the tangible personal property or services "would be a sale not subject to the [sales] tax imposed by sections 5739.01 to 5739.31 of the Revised Code," then the use tax described in R.C. Chapter 5741 is likewise not imposed. R.C. 5741.02(C)(2).

{¶ 13} Generally, the purchase of cleaning services is subject to the sales and use tax. See R.C. 5739.01(B)(3)(j) (" 'Sale' and 'selling' include * * * [a]ll transactions by which * * * [b]uilding maintenance and janitorial service is or is to be provided") and R.C. 5739.02 (the sales tax is "levied on each retail sale made in this state"). The term "[b]uilding maintenance and janitorial service" is defined in R.C. 5739.01(II) as "cleaning the interior or exterior of a building and any tangible personal property located therein or thereon."

## Cousino's Cross–Appeal

{¶ 14} Cousino hired subcontractors to clean fire- or flood-damaged buildings during the audit period, and the Tax Commissioner concluded that Cousino's purchases of those cleaning services were subject to the use tax imposed on building maintenance and janitorial services. Cousino contends instead that the cleaning services it (with the help of subcontractors) provided to the company's nonprofit customers—most notably, public school districts and churches—were not subject to the use tax, because these tax-exempt entities, not Cousino, were the consumers of the services that the Tax Commissioner assessed.

### Cousino was a Consumer of Cleaning Services

{¶ 15} First, the Tax Commissioner and the BTA both found that Cousino was eligible for imposition of use taxes on the cleaning services because Cousino was the consumer of those services. That finding is well supported by facts in the record.

{¶ 16} Under R.C. 5741.02(B), the consumer who realizes the benefit of a service is liable for the use tax imposed on that service. And "consumer" is defined in R.C. 5741.01(F) as "any person who has purchased tangible personal property or has been provided a service for storage, use, or other consumption or benefit in this state." Several terms in that definition are themselves defined as well: "person" is defined in R.C. 5741.01(A) to include corporations; "purchase" is defined in R.C. 5741.01(D) as "acquired or received for a consideration"; and "providing a service" is defined by R.C. 5741.01(M) and R.C. 5739.01(X) as "providing or furnishing * * * [any taxable service, including building maintenance and janitorial service] for consideration."

{¶ 17} Cousino was the consumer of the cleaning services that were provided to it by the various subcontractors. It benefited from those services because it was able to charge its final customers—insurance companies and the owners of dirty and damaged buildings who had purchased insurance—both for those cleaning services and for the materials and skilled labor that Cousino's own employees provided to those customers when reconstructing and restoring the buildings. The cleaning services that Cousino consumed allowed Cousino to deliver fully cleaned and restored buildings to Cousino's customers. And as Cousino itself acknowledges, it received the subcontractors' services in return for a consideration. That is to say, Cousino paid the subcontractors for their work.

{¶ 18} In addition, nothing in the record suggests that Cousino or the companies from which it purchased cleaning services were exempt from sales and use taxes, and there is likewise no indication in the record that the cleaning companies collected *sales* taxes on the "building maintenance and janitorial services" that they provided to Cousino. R.C. 5739.01(II). Had they done so, Cousino would not be liable for use taxes. See R.C. 5741.02(C)(1).

{¶ 19} Cousino was, therefore, the consumer of the taxable janitorial services that the cleaning subcontractors provided to it. The fact that Cousino's customers—some of which were nonprofit entities—also benefited from the cleaning services does not change the fact that Cousino was rightly viewed by the Tax Commissioner as the consumer of those services because Cousino realized a benefit from them and paid a consideration for them to the service providers.

***The Resale Exception Does Not Apply***

{¶ 20} The Tax Commissioner and the BTA both found as well that Cousino did not "resell" the cleaning services in the same form in which they were purchased. That conclusion is also a sound one.

{¶ 21} R.C. 5739.01(E) excludes from the definition of "[r]etail sale" (and therefore excludes from the R.C. 5739.02 sales tax on retail sales) any sale "in which the purpose of the consumer is to resell the thing transferred or benefit of the service provided, by a person engaging in business, in the form in which the

same is, or is to be, received by the person." In other words, when the purchaser's intent in buying goods or services is to resell them to yet another purchaser without changing the goods or services in any way, the original purchase is not considered a "retail sale" and is therefore not subject to the sales tax on retail sales. (And under R.C. 5741.02(C)(2), any sale not subject to sales tax is likewise not subject to the use tax.)

{¶ 22} The BTA concluded that the resale exception in R.C. 5739.01(E) does not apply in this case. The Tax Commissioner's final determination had likewise rejected the application of the resale exception, explaining:

{¶ 23} "The cleaning services were not resold to the petitioner's [Cousino's] customers in an unchanged form. Rather, the petitioner received the benefit of the cleaning services and added its project management/general contractor skills to the cleaning services."

{¶ 24} That statement by the Tax Commissioner aptly summarizes the facts. According to testimony presented by Cousino to the BTA, the cleaning subcontractors typically billed Cousino for their services, and then those charges were incorporated into the invoices that Cousino would send to its customers (i.e., insurance companies or the property owners whose buildings Cousino had agreed to restore). The cleaning services were consumed—not resold—by Cousino. Cousino was not a retail seller of those services. The insurance companies and property owners promised to pay Cousino to provide a restored and rebuilt building, and Cousino in turn hired and paid cleaning subcontractors to, as one of those subcontractors told the BTA, "get[ ] the building prepped for Cousino to rebuild."

{¶ 25} Although this case involves janitorial or cleaning services, a recent case involving employment services is instructive. In *Corporate Staffing Resources, Inc. v. Zaino* (2002), 95 Ohio St.3d 1, 764 N.E.2d 1006, the court held that a provider of employment services was not entitled to the resale exception, because the computer-hardware company that hired the temporary employees from the employment-service provider did not resell those services. The computer-hardware company had purchased "a temporary and flexible work force of sufficient size and expertise," and the computer company's customers had in turn paid the computer company to keep the customers' computers "up and running." Id. at 3, 764 N.E.2d 1006. The employment services (the temporary workers) were "a means to an end" for the computer company's customers, rather than an end in themselves. Id. Those services were not, in other words, resold "in the form in which * * * [they had been] received," as would be required for the R.C. 5739.01(E) resale exception to apply to the initial sale of the employment services. The computer company paid for employment services and used the workers it hired to service computers. The company that had provided the temporary

workers and had been paid for that service owed taxes on the money it earned in the transaction. Id. at 5, 764 N.E.2d 1006.

{¶ 26} The same is true in this case. Cousino brought in cleaning-service subcontractors to "do the cleaning end" of the restoration projects that Cousino performed for its customers and paid those subcontractors for their work, according to the production manager for one of the subcontractors. Cousino, in turn, performed, as a Cousino official who serves as a salesman and estimator explained, "the overall job," which he characterized as "a restoration process" involving "construction or reconstruction" of damaged buildings.

{¶ 27} Like the computer company in *Corporate Staffing Resources,* Cousino hired skilled service providers to perform certain jobs and then relied on the efforts of those workers to help Cousino deliver the reconstructed and restored buildings that Cousino's customers needed. The employment services were not resold by the computer company in *Corporate Staffing Resources,* and the cleaning services were not resold by Cousino in this case. The companies that did sell "[b]uilding maintenance and janitorial service," as that term is defined in R.C. 5739.01(II), were the subcontractors hired by Cousino to clean the buildings that Cousino planned to restore. The R.C. 5739.01(E) resale exception does not exempt Cousino from paying use taxes for the cleaning services that it purchased and used, just as that exception did not exempt the computer company in *Corporate Staffing Resources* from paying use taxes for the employment services that it purchased and used. See, also, *Bellemar Parts Industries, Inc. v. Tracy* (2000), 88 Ohio St.3d 351, 353, 725 N.E.2d 1132 (rejecting a taxpayer's effort to rely on the resale exception when the taxpayer "received the benefit" of services that it purchased and then combined that benefit with the taxpayer's materials and the work of its own employees "to create the item sold").

{¶ 28} The burden rested on Cousino to prove to the Tax Commissioner and the BTA that the R.C. 5739.01(E) resale exception applied to the janitorial services that Cousino claims to have resold to its customers. Cousino did not meet that burden. Cousino is not in the business of selling or reselling cleaning services and indeed is not even licensed to sell cleaning services under R.C. 5739.17(A)(3), which requires vendors of taxable goods and services to purchase a vendor's license from the county treasurer. The benefit that Cousino delivered to its customers (reconstructed and restored buildings) was not the same benefit that Cousino purchased in the same form in which Cousino received it from the cleaning subcontractors. The BTA therefore reached the reasonable and lawful conclusion that Cousino had not proven its entitlement to the resale exception.

{¶ 29} For those reasons, we do not agree with the arguments presented by Cousino in its cross-appeal. Instead, we affirm the decision of the BTA on the issues raised in the cross-appeal because (1) Cousino was the consumer of the

cleaning services that it purchased from the subcontractors and (2) Cousino did not resell the benefit of those services in the form in which it was received (as would be required for the R.C. 5739.01(E) exception to apply).

## The Tax Commissioner's Appeal

{¶ 30} Although the BTA found Cousino ineligible for the R.C. 5739.01(E) resale exception, it concluded that a different provision, R.C. 5739.02(B)(13), nonetheless exempted Cousino from the obligation to pay use taxes on some of the company's purchases of cleaning services from the subcontractors. Under that latter statutory provision, sales and use taxes do not apply to certain construction-related sales, including the sale of (1) "[b]uilding and construction materials and services sold to construction contractors for incorporation into a structure or improvement to real property under a construction contract with this state or a political subdivision of this state" or (2) building and construction materials and services sold to construction contractors for incorporation into a structure or improvement to real property "that are accepted for ownership by this state or any of its political subdivisions." R.C. 5739.02(B)(13).

{¶ 31} The Tax Commissioner has appealed the BTA's decision granting the tax exemption, challenging the decision both on procedural grounds and on the merits.

### *Cousino Failed to Cite R.C. 5739.02(B)(13) in its Notice of Appeal to the BTA*

{¶ 32} The Tax Commissioner argues first that Cousino did not properly raise an R.C. 5739.02(B)(13) exemption request before the BTA and therefore should not have been given that exemption in that forum. We agree.

{¶ 33} The Tax Commissioner's May 2002 final determination rejected Cousino's request for an R.C. 5739.02(B)(13) exemption. Cousino then appealed to the BTA.

{¶ 34} R.C. 5717.02, which explains the proper procedure for challenging the Tax Commissioner's final determinations, directs any appellant who files a notice of appeal with the BTA to attach a copy of the Tax Commissioner's final determination to that notice and to "also specify the errors therein complained of." When Cousino appealed to the BTA in July 2002, however, Cousino never mentioned R.C. 5739.02(B)(13) in its four-page notice of appeal, despite listing several other statutory provisions in the notice. Cousino also did not cite R.C. 5739.02(B)(13) anywhere in its 12–page posthearing appellant's brief filed with the BTA in September 2003 or in its six-page reply brief filed with the BTA in November 2003.

{¶ 35} Even so, when the BTA issued its decision in August 2004, the BTA found that the omission of R.C. 5739.02(B)(13) from Cousino's notice of appeal was "a typographical error" on Cousino's part that the BTA could overlook. Our

examination of the notice of appeal leads us to conclude that that finding was an incorrect one.

{¶ 36} This court has held in past cases that an appellant must specify the particular exemption it seeks in its notice of appeal to the BTA in order to preserve the issue for review. See, e.g., *Kern v. Tracy* (1995), 72 Ohio St.3d 347, 349, 650 N.E.2d 428 (appellants' failure to mention the R.C. 5739.02(B)(14) exemption claim was "fatal"); *Cleveland Elec. Illum. Co. v. Lindley* (1982), 69 Ohio St.2d 71, 75, 23 O.O.3d 118, 430 N.E.2d 939 ("Under R.C. 5717.02, a notice of appeal does not confer jurisdiction upon the Board of Tax Appeals to resolve an issue, unless that issue is clearly specified in the notice of appeal"); *Lenart v. Lindley* (1980), 61 Ohio St.2d 110, 114, 15 O.O.3d 152, 399 N.E.2d 1222 ("R.C. 5717.02 is a jurisdictional enactment and * * * adherence to the conditions and procedure set forth in the statute is essential"); *Queen City Valves v. Peck* (1954), 161 Ohio St. 579, 583, 53 O.O. 430, 120 N.E.2d 310, quoting Black's Law Dictionary (4th Ed.1951) (R.C. 5717.02 requires the appellant to "specify" any alleged errors, and "specify" means " 'to mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize; or to distinguish by words one thing from another' ").

{¶ 37} Cousino's four-page, single-spaced notice of appeal to the BTA was certainly detailed, but it contained no mention of an R.C. 5739.02(B)(13) exemption or any language that might suggest to the reasonable reader that Cousino intended to claim an exemption under that section. Cousino did refer in the notice to the R.C. 5739.01(E) resale exception addressed earlier in this opinion and also referred in three different paragraphs to tax exemptions under R.C. 5739.02(B)(1) (exempting sales to the state and its political subdivisions) and R.C. 5739.02(B)(12) (exempting sales to churches, nonprofit organizations, and other tax-exempt entities). The accompanying text of the notice of appeal surrounding the references to those two exemptions repeatedly mentioned "non-profit" organizations and "churches." Those terms suggest that Cousino intended to claim exemptions under the two statutory provisions that it listed in three places in the notice.

{¶ 38} Significantly, the notice did not refer to any of the terms that are unique to R.C. 5739.02(B)(13), such as "[b]uilding and construction materials and services" or "incorporation" into real estate. While the notice did mention "sales to the State or any of its political subdivisions," that language is a direct quote from R.C. 5739.02(B)(1), one of the two exemption provisions that Cousino cited in the notice of appeal, rather than from R.C. 5739.02(B)(13), which the BTA's decision addressed.

{¶ 39} The BTA concluded that Cousino's three references in the notice to R.C. 5739.02(B)(1) were actually typographical errors and that Cousino had intended

to type R.C. 5739.02(B)(13) instead. The text surrounding the three references to R.C. 5739.02(B)(1) in the notice does not support that view, however, and Cousino's failure to mention R.C. 5739.02(B)(13) in its two posthearing briefs filed with the BTA reinforces our conclusion that Cousino never intended to ask the BTA for an exemption under R.C. 5739.02(B)(13).

{¶ 40} If the omission of any reference in the notice to R.C. 5739.02(B)(13) were truly a typographical error, and if Cousino's true intent were evident from the text of the notice taken as a whole, then perhaps the "typographical error" could rightly be overlooked. This omission was not a typographical error, however, and the BTA exceeded its jurisdiction by considering and granting a tax exemption to Cousino based on a statutory provision that is mentioned nowhere in the notice of appeal or in Cousino's two posthearing briefs.

{¶ 41} For more than 50 years, this court's decisions interpreting the specificity requirement of R.C. 5717.02 have made clear that a notice of appeal filed with the BTA must explicitly and precisely recite the errors contained in the Tax Commissioner's final determination. The notice of appeal that Cousino filed with the BTA did not challenge the Tax Commissioner's denial of an R.C. 5739.02(B)(13) exemption, and no objective and reasonable reader could honestly say that it did. Though this court is " 'not disposed to deny review by a hypertechnical reading of the notice,' " *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 197, 625 N.E.2d 597, quoting *Buckeye Internatl., Inc. v. Limbach* (1992), 64 Ohio St.3d 264, 268, 595 N.E.2d 347, the notice in this case, just like Cousino's posthearing briefs, provided no indication that Cousino was seeking an R.C. 5739.02(B)(13) exemption before the BTA. Cousino did not satisfy the specificity requirement of R.C. 5717.02 with respect to the R.C. 5739.02(B)(13) tax exemption.

{¶ 42} On the Tax Commissioner's appeal, then, we must reverse the BTA's decision granting an R.C. 5739.02(B)(13) exemption to Cousino. The BTA had no jurisdiction to consider that exemption in this case.

### Conclusion

{¶ 43} For the reasons stated above, the BTA's decision is affirmed in part and reversed in part. The BTA correctly determined that (1) Cousino was the consumer of the cleaning services that it purchased and (2) Cousino did not resell those services in the same form in which they were purchased (and therefore was not entitled to a tax exemption under the R.C. 5739.01(E) resale exception). The BTA incorrectly found that Cousino preserved its claim to an R.C. 5739.02(B)(13) exemption in the notice of appeal that Cousino filed with the BTA, and therefore we hold that the BTA had no jurisdiction to address or grant an exemption under that statutory provision.

{¶ 44} The case is remanded for further proceedings. The BTA did not consider Cousino's requests for tax exemptions under R.C. 5739.02(B)(1) and 5739.02(B)(12), and the BTA should now consider whether Cousino is entitled to an exemption under either or both of those provisions.

Decision affirmed in part
and reversed in part,
and cause remanded.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Lane Montz, for appellee and cross-appellant.

Jim Petro, Attorney General, and Janyce C. Katz, Assistant Attorney General, for appellant and cross-appellee.