**[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 411.]**

USAIR, INC., APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *USAir, Inc. v. Tracy*, 1997-Ohio-333.]

*Taxation—Use tax on soft drinks and liquor sold to coach-class passengers by passenger airline service in Ohio—Assessment imposed on soft drinks by Board of Tax Appeals affirmed—Assessment imposed on liquor transactions reversed and remanded.*

(No. 96-2248—Submitted September 24, 1997—Decided December 10, 1997.)

APPEAL from the Board of Tax Appeals, No. 94-S-276.

———————————

{¶ 1} USAir Inc., appellant, operates a passenger airline service in Ohio, flying through Cleveland, Columbus, Toledo, Dayton, and Akron/Canton. On its flights, it serves complimentary soft drinks and sells liquor to its coach-class passengers. It collects a five percent sales tax on the liquor sales and remits this sales tax to the state.

{¶ 2} The Tax Commissioner, appellee, audited USAir for purchases it made between January 1, 1988 through June 30, 1991. The commissioner assessed use tax on USAir's use of the soft drinks and an additional county permissive use tax on its use or storage of the liquor in specific counties. To calculate the permissive tax on the liquor, the commissioner applied a factor, related to the county of departure of a flight, to the remitted sales tax amounts.

{¶ 3} USAir appealed the commissioner's order to the Board of Tax Appeals ("BTA"), but the BTA affirmed. As to the soft drinks, the BTA rejected USAir's contention that it used the drinks directly in the rendition of a public utility service. It found that supplying beverages to passengers was not necessary or essential to USAir's transportation system. USAir's witness before the BTA on

this point, John H. Lunn, is a senior pilot for USAir. He could not state that serving soft drinks was essential to transporting passengers.

{¶ 4} As to the liquor, the BTA rejected USAir's contention that the commissioner could not impose the county permissive use tax. USAir argued that the plane had left the county when USAir served the liquor to the passengers. The BTA, instead, found that the incidence of the tax was on USAir's use and storage of the beverages in the county levying the permissive tax.

{¶ 5} This cause is now before this court upon an appeal as of right.

_____

*Vorys, Sater, Seymour & Pease, Raymond D. Anderson, Anthony L. Ehler* and *Kevin M. Czerwonka*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Janyce C. Katz*, Assistant Attorney General, for appellee.

_____

**ALICE ROBIE RESNICK, J.**

I

Soft Drinks

{¶ 6} USAir argues that passengers drank soft drinks to avoid dehydration during the flight and that its provision of such drinks was essential to rendering its transportation service. Thus, it argues, it used or consumed soft drinks directly in the rendition of a public utility service. The commissioner replies that USAir did not establish the necessity of the soft drinks in rendering the transportation service.

{¶ 7} R.C. 5739.01(E)(2) excepts from the sales tax (and R.C. 5741.02[C][2] from the use tax) sales "in which the purpose of consumer * * * is to use or consume the thing transferred * * * directly in the rendition of a public utility service, except that the sales tax levied by section 5739.02 of the Revised Code shall be collected upon all meals, drinks, and food for human consumption sold upon Pullman and railroad coaches."

**{¶ 8}** R.C. 5739.01(P) defines "used directly in the rendition of a public utility service" as "that property which is to be incorporated into and will become a part of the consumer's production, transmission, transportation, or distribution system and which retains its classification as tangible personal property after such incorporation; fuel or power used in the production, transmission, transportation, or distribution system; and tangible personal property used in the repair and maintenance of the production, transmission, transportation or distribution system, including only such motor vehicles as are specially designed and equipped for such use."

**{¶ 9}** Before the enactment of this definition on September 1, 1967 (then R.C. 5739.01[Q], 132 Ohio Laws, Part I, 1985), we exempted items that made the transportation service convenient and facilitative to passengers. *Erie RR. Co. v. Peck* (1953), 160 Ohio St. 322, 52 O.O. 209, 116 N.E.2d 304. However, after the General Assembly adopted this definition, the court, in *Cincinnati Gas & Elec. Co. v. Kosydar* (1974), 38 Ohio St.2d 71, 75, 67 O.O.2d 81, 84, 310 N.E.2d 245, 248, ruled that "the test for determining whether such acquisitions are within the public utility exception of R.C. 5739.01(E)(2) is a statutory one." In paragraph one of the syllabus, the *Cincinnati Gas* court held that the property must satisfy one of the three standards of R.C. 5739.01(Q) (now [P]). In paragraph two of the syllabus, we held that the statute excepts "only those items * * * which are essential to the continuous production of the public utility service."

**{¶ 10}** In *Cleveland Elec. Illum. Co. v. Lindley* (1982), 69 Ohio St.2d 71, 74, 23 O.O.3d 118, 120, 430 N.E.2d 939, 941, we elaborated further:

"Under R.C. 5739.01(Q) [now (P)] it is enough that the property, once acquired, actually is incorporated into and used as a part of a vital or essential step in the production process."

**{¶ 11}** In this case, however, we agree with the BTA. Soft drinks are a convenience for the passengers; soft drinks are not essential in transporting

passengers. USAir's witness, a senior pilot, could not testify that the soft drinks were essential to providing the transportation service. Indeed, USAir does not serve soft drinks on some flights because the flight is too short. Further, the witness could not cite a Federal Aviation Agency regulation requiring the serving of beverages. Thus, USAir did not establish that serving soft drinks to its passengers was essential or vital to transport passengers.

{¶ 12} USAir also argues that we must interpret language in R.C. 5739.01(E)(2) that specifically taxes sales of food and beverages in Pullman and railroad coaches under the statutory-interpretation doctrine of *expressio unius est exclusio alterius.* It contends that this language must mean that the General Assembly intended not to tax soft drinks served in airplanes, since the statute specifically taxes sales of food in rail coaches.

{¶ 13} The commissioner responds that this language conforms with R.C. 5739.02(B)(2), in that food consumed off a vendor's premises is not taxable, but food sold for on-premises consumption is taxable. We agree. R.C. 5739.01(E)(2) recognizes that the premises in the railroad's situation happens to be the Pullman car of a train. The General Assembly did not mention food sold on airlines because in 1937, when the General Assembly enacted this provision (then G.C. 5546-1), air travel was a nascent business. (116 Ohio Laws, Part II, 324.) The General Assembly probably did not contemplate serving food on airplanes.

II

Liquor

{¶ 14} USAir next contends that its use of liquor is exempt under R.C. 5739.01(E)(1) and 5741.02(C)(2) because it purchased the liquor for resale. The commissioner first replies that USAir waived this claim because it failed to specify it as error in its petition for reassessment filed with the commissioner. USAir had mentioned the resale exemption in its notice of appeal filed with the BTA.

**{¶ 15}** USAir filed the petition for reassessment after we decided *CNG Dev. Co. v. Limbach* (1992), 63 Ohio St.3d 28, 584 N.E.2d 1180. In *CNG Dev. Co.*, issued on February 19, 1992, we required a taxpayer to specify error in its petition for reassessment to the commissioner, which permitted succeeding appellate bodies to have jurisdiction over the error. But, USAir filed the petition before the General Assembly enacted Am.S.B. No. 358, 144 Ohio Laws, Part II, 2370 (effective January 15, 1993), which permitted raising additional objections with the commissioner if registered in writing before the commissioner's final determination. R.C. 5735.12(B). Consequently, USAir needed to specify this claim in its petition for reassessment. In its petition, filed on July 14, 1992, it states:

"*Liquor*.

"As explained to the auditor, all of USAir's alcoholic beverages (liquor, beer, and wine) are purchased outside of Ohio. Alcoholic beverages are then distributed to the various stations. USAir only sells alcoholic beverages when its aircraft are in flight at a comfortable cruising altitude. Alcoholic beverage service is not made during ascent or descent and no sales are made on the ground. Therefore, the only time that the alcoholic beverages are sold to passengers is at cruise altitude, long after the aircraft has left or approaches any locality in the State of Ohio. Alcoholic beverage sales can be apportioned to the state. However, USAir aircraft are outside any Ohio county during any liquor sales. Therefore, there is no nexus in any Ohio county.

"USAir has already remitted a state sales tax on that portion of alcoholic beverages which is apportionable to the State of Ohio with its regular sales and use tax filings. In the assessment work papers on page[s] 30 to 35, the auditor has assessed local sales tax on alcoholic beverages used on a mysterious apportionment to each locality in Ohio. However, as previously mentioned, none of the sales of alcoholic beverages occur[s] within an Ohio county or city. This portion of the assessment should be deleted from the audit."

**{¶ 16}** USAir in its petition thus questions the commissioner's action in assessing a permissive use tax on the liquor, and it alludes to the resale exemption in stating that it sold the liquor to passengers. Finally, USAir claims that the commissioner should not assess a permissive use tax on its use of the liquor. We find that these assertions specify error. "In resolving questions regarding the effectiveness of a notice of appeal, we are not disposed to deny review by a hypertechnical reading of the notice. *Abex Corp. v. Kosydar* (1973), 35 Ohio St.2d 13, 17, 64 O.O.2d 8, 10, 298 N.E.2d 584, 587." *Buckeye Internatl., Inc. v. Limbach* (1992), 64 Ohio St.3d 264, 268, 595 N.E.2d 347, 350. Since the BTA did not review this claim, we remand the case to it.

**{¶ 17}** Since the BTA might not grant USAir relief on the resale claim, we must resolve USAir's argument that the commissioner assessed tax on the wrong purchase price. According to the record, the commissioner derived the assessment by applying a factor to the collected and returned sales tax. USAir claims that the assessment, therefore, is on the presumably marked-up price it received from the passenger and not the price it paid for the liquor. The commissioner responds that this was the only evidence of a price he could locate.

**{¶ 18}** USAir correctly claims that the price levied on should be what it paid for the liquor. R.C. 5741.02 levies the tax on the storage, use, or other consumption of tangible personal property. R.C. 5741.04 requires the consumer to pay the tax based on the price paid at or prior to the delivery of possession of the thing sold to the consumer, in this case, USAir. Thus, the commissioner should have assessed the tax on the price of USAir's purchase of the liquor and not on the price of USAir's sale to its passengers.

**{¶ 19}** However, USAir must establish the price it paid. If it has not, as the commissioner maintains, it has failed in its burden of proof. Thus, the BTA must determine whether USAir has established the purchase price on the evidence of

record. See *Sunset Square Ltd. v. Miami Cty. Bd. of Revision* (1990), 50 Ohio St.3d 42, 552 N.E.2d 632.

{¶ 20} Accordingly, we affirm the assessment imposed on the soft drinks. We reverse and remand the assessment on the liquor transactions for the BTA to determine whether the resale exemption applies or, if not, to determine whether the purchase price of the liquor was established by USAir.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., DOUGLAS and COOK, JJ., concur.

F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 21} In deciding this case, we have lost sight of a common-sense approach to the law. The court adopts a technical reading of "essential" in finding that Ohio can levy a use tax on soft drinks to be consumed aboard airlines. However, the business of transportation of persons, I believe, requires a different analysis from that employed by the majority in interpreting the tax code.

{¶ 22} The case of *Erie RR. Co. v. Tax Commr.* (1953), 160 Ohio St. 322, 52 O.O. 209, 116 N.E.2d 304, directly illustrates the difficulty in applying the concept of "essential" or "direct use" in transportation cases. In *Erie,* the court reviewed the taxability of materials used or consumed in the construction of a passenger station, which the Tax Commissioner had ruled was not "directly used" in transportation but was merely "convenient." The Board of Tax Appeals found:

"No doubt can exist of the fact that construction and use of this building is of advantage to Erie and its passengers. It expedites the handling of baggage, express, [and] mails and conveniences passengers. It facilitates their transportation system, just as a typewriter in its offices facilitates its paper work. The business of

railroads in early days was the transportation of passengers and freight. Little or no heed was paid to a passenger's convenience. * * * As transportation grew the states entertained an idea that transportation companies served the public and that they owed some duty to their patrons. Legislative requirements resulted. This, together with carriers' competition, and their own convenience, brought about the erection of stations which provided waiting rooms, toilets, heating facilities and other facilities now found in railroad stations for their own and their patrons' convenience. Without these conveniences the business of transportation could and does still go on. These conveniences, without question, facilitate the business of transportation. They expedite it and make it attractive to the public, but do not enter into the act of transportation itself." *Id*. at 323-324, 52 O.O. at 210, 116 N.E.2d at 305.

{¶ 23} However, this court in *Erie* interpreted the code language in a broader manner:

"Were the materials which were fabricated into the appellant's passenger station and its approaches used or consumed 'directly' in the rendition of a public utility service?

"This question is illustrative of the fact that adjectives and adverbs seem to be the chief trouble makers in problems of statutory construction for the obvious reason that they may mean one thing to one mind and something different to another. So here the word 'directly' is applied by the appellant and the appellee to the instant facts with opposite results." *Id*. at 325-326, 52 O.O. at 211, 116 N.E.2d at 306.

{¶ 24} Citing code requirements that railroad stations maintain suitable waiting rooms "conducive to the comfort and health" of passengers (R.C.

4963.02),[1] this court in *Erie* found that such statutes were of value in determining whether a passenger station was essential and used directly in the business of transportation.

**{¶ 25}** Similar issues existed in *Ohio Bus Line Co., Inc. v. Bowers* (1964), 1 Ohio App.2d 122, 125, 30 O.O.2d 150, 152, 200 N.E.2d 688, 690 (restroom supplies and safety equipment are exempted, as "buses must be clean and safe for passengers").

**{¶ 26}** I do not believe that the definition in R.C. 5739.01(P) overrides the concepts embodied in these two cases. That items used for the comfort of passengers are "essential" and "directly used" is a concept that can apply equally well under the new definition. "Essential" obviously holds different meanings for different minds. *Erie,* 160 Ohio St. at 325-326, 52 O.O. at 211, 116 N.E.2d at 306.

**{¶ 27}** The statutes interpreted by the majority can be just as easily interpreted in a practical manner. In the words of R.C. 5739.01(E)(2), the consumer "consume[s] the thing transferred [soft drinks] * * * directly on the plane in the rendition of a public utility service [air transport]." R.C. 5739.01(P) requires transportation (flies from point A to point B).

**{¶ 28}** It is difficult to compare the consuming of soft drinks when one is thirsty to "items * * * which are essential to the continuous production of the public utility service," in the production of electricity, such as the coal handling equipment, air preheaters, and storage tanks for fuel, acid, and water in *Cincinnati Gas & Elec. Co. v. Kosydar* (1974), 38 Ohio St.2d 71, 76, 67 O.O.2d 81, 85, 310 N.E.2d 245, 248. The need of the human body for fluids is not comparable to the need for *leased gondola cars for transportation of coal,* as in *Cleveland Elec. Illum.*

---

1. R.C. 4963.02 still requires that railroads maintain waiting rooms. "Such room shall be so maintained and kept as to be conducive to the *comfort and health* of the patrons of the railroad." (Emphasis added.) The analogy to airline passengers is compelling.

*Co. v. Lindley* (1982), 69 Ohio St.2d 71, 74, 23 O.O.3d 118, 120, 430 N.E.2d 939, 941. Passenger service cannot be likened to the production of electricity.

{¶ 29} The argument over whether dehydration was *scientifically* proven misses the point. Do liquids become essential only in a five-hour flight, or in a ten-hour transatlantic flight? When airline passengers are in flight, they are in a closed environment. Food and beverages are essential to human comfort and convenience.

{¶ 30} Transporting *human beings* is the business of airlines. The analysis of the necessity of services to passengers should be different from the analysis of necessity in the production and transporting of gas or electricity. This analysis does not require scientific studies. It requires only common sense and human experience.

{¶ 31} In addition, I would reverse the Board of Tax Appeals on the issue of a permissive use tax on the sale of alcoholic beverages, rather than remand for consideration.

{¶ 32} The alcoholic beverages were clearly held for resale under R.C. 5739.01(E)(1) and 5741.02(C)(2) and are therefore exempt from a permissive use tax. USAir has already paid the state-levied sales tax on such sales. Storing and loading the liquor beverages were for purposes of *resale*, and the application of a permissive use tax would fly in the face of all other interpretations of the phrase "held for resale" and would affect all retail vendors in Ohio. Such double taxation is unfair.

{¶ 33} The tax laws of this country are overreaching and burdensome already. We find more and more ways to tax every small event or transaction. To allow the stretch made by the Tax Commissioner and the Board of Tax Appeals only furthers the sense of oppressiveness of the tax code. Common sense should prevail in interpreting the law in this case. Therefore, I respectfully dissent.

F.E. SWEENEY and PFEIFER, JJ., concur in the foregoing dissenting opinion.

————————————